JOURNAL ENTRY AND OPINION
{¶ 1} Defendant James Hemphill appeals from his conviction for 22 counts each of rape and gross sexual imposition, both with sexually violent predator specifications, 7 counts each of rape and gross sexual imposition, and 29 counts of kidnapping with sexual motivation specifications. For the reasons set forth below, we affirm in part, vacate in part, and remand for re-sentencing.
 {¶ 2} On February 26, 2004, defendant was indicted pursuant to a 99-count indictment, charging him with sexual offenses upon his stepdaughter, d.o.b. June 8, 1990. Counts 1-22 set forth the time period from September 1, 2001 to June 8, 2003, and charged defendant with rape of the girl while she was under the age of thirteen, and contained furthermore clauses alleging force, and sexually violent predator specifications. Counts 23-44 set forth the time period from September 1, 2001 to June 8, 2003, and charged defendant with gross sexual imposition upon the girl while she was under the age of thirteen, and contained sexually violent predator specifications. Counts 45-66 set forth the time period from September 1, 2001 to June 8, 2003, and charged defendant with kidnapping a victim under the age of thirteen. These charges contained sexual motivation specifications. Counts 67-73 set forth the time period from June 8, 2003 to July 30, 2003 and charged defendant with rape of the girl immediately after her thirteenth birthday. These charges contained furthermore clauses alleging force. Counts 74-80 set forth the time period from June 8, 2003 to July 30, 2003, and charged defendant with gross sexual imposition with furthermore clauses alleging force. Counts 81-87 set forth the time period from June 8, 2003 to July 30, 2003, and charged defendant with kidnapping with sexual motivation specifications. All of the remaining counts set forth the time period from August 1, 2003 to August 31, 2003. Counts 88-91 charged defendant with rape with furthermore clauses alleging force. Counts 92-95 charged defendant with gross sexual imposition with furthermore clauses alleging force, and Counts 96-99 charged defendant with kidnapping with sexual motivation specifications.
 {¶ 3} The state asserted, essentially, that defendant had committed 33 acts of gross sexual imposition, 33 acts of kidnapping and 33 acts of rape upon the girl. The state presented the testimony of the girl, A.J.,[1] who stated that her birth date is June 8, 1990, and that she is now in the ninth grade. When she was in sixth grade, and twelve years-old, defendant, her stepfather, requested that she come to his bedroom to help him find a pair of socks. He told her to close the door, then he touched her chest.
 {¶ 4} The girl further stated that "[s]ometimes he would pull my pants down and he would take his private part inside of mine and have sex with me." (Tr. 212-213).
 {¶ 5} The prosecuting attorney asked how old the girl was when such incidents occurred and she stated, "12 or 13." (Tr. 213).
 {¶ 6} The girl also stated that defendant put his mouth on her private part at least twice, and that he would rub her chest "any chance he get." (Tr. 214).
 {¶ 7} Next, she testified generally that he "would start rubbing on [her]" chest and private part when she was sleeping and would pull her pants down until she had sex with him.
 {¶ 8} The girl testified that sexual conduct occurred in his bedroom after he had sent the other children outside to clean the van and also occurred when she slept in the basement. On other occasions, he would have the other children perform other chores.
 {¶ 9} In relevant part, the transcript provides:
 {¶ 10} [By the prosecuting attorney:]
 {¶ 11} "Q. Do you — can you tell us as to whether or not he had vaginal sex with you, intercourse with you, on at least 33 times?
 {¶ 12} "A. Yes.
 {¶ 13} "Q. Would he — did he touch your breasts at least 33 times?
 {¶ 14} "A. Yes." (Tr. 215).
 {¶ 15} The girl stated that sometimes she told him not to do things to her but he did them anyway. The girl testified that defendant told her that if she ever disrespected him or her mother he would break her fingers and her legs and make her eat her fingers.
 {¶ 16} She stated that she did not tell anyone about the abuse because she was afraid that no one would believe her and she didn't want anyone to get into trouble. Later, however, she told her cousin Miya that her stepfather fell on her and had sex with her. The cousin told the girl's mother, and she then discussed the matter with both her mother and grandmother.
 {¶ 17} The girl stated that her mother and grandmother took her to Kaiser for an examination, but the girl did not tell the doctor that she had been molested. They then took her to the Hough-Norwood Clinic but did not mention anything about molestation.
 {¶ 18} Later, in July 2003, the girl was baptized and the girl's grandmother arranged for her to speak to Pastor Eloise Corbin about her allegations. When the girl returned home, defendant was there. At this time, defendant told the girl, her mother, and her family that he did molest the girl, that he was sorry, that he would get counseling, and that he did not want to go to jail. The girl stated that the police were not contacted and that she did not want defendant to go to jail.
 {¶ 19} She stated that the last time he molested her was after her baptism which was after her 13th birthday.
 {¶ 20} In January 2004, the girl brought a knife to school and was summoned to the office. At this time, she told Alecia Burns, that her stepfather had molested her. The girl then spoke to school psychiatrist Christine Burke, reporting that defendant sent her brothers outside then had sexual intercourse with her. The girl also spoke to county social worker Ian Lucash and informed him of the molestation.
 {¶ 21} The girl stayed at her grandmother's house for one week after reporting the matter. When she returned home, defendant was not residing there. Later, the girl's mother told her that defendant was moving back in but that the girl would now have a lock on the door of her room.
 {¶ 22} The girl stated that she did not lock the door because she needed to be awoken to go to school. She testified that when she was sleeping defendant "opened her legs" and pulled up her shirt. He mother walked into the room and asked her what had happened. At first, the girl denied that anything improper had occurred but later told her mother that he had "opened her legs" and pulled up her shirt.
 {¶ 23} On cross-examination, the girl explained that the first incident, when defendant touched her chest, occurred in the summer after sixth grade. She testified that in the second incident, he touched her chest and also pulled her pants down. She could not specifically recall the third incident. She stated that the fourth incident involved "the same thing," and that defendant would improperly touch her on any chance that he could. She admitted, however, that she never gave anyone an estimate about the number of times that the acts occurred.
 {¶ 24} On redirect, the prosecuting attorney asked the girl the following question:
 {¶ 25} "Q. * * * [A]re you telling the ladies and gentlemen that the defendant raped you at least 33 times and he touched your breats at least 33 times and performed oral sex on you on at least two occasions because you were concerned that he would discipline you? Are you making this up?
 {¶ 26} "A. No."
(Tr. 237).
 {¶ 27} On cross-examination, the girl also stated that on her mother's birthday, or on November 11, 2003, defendant pulled up her shirt, spread her legs apart, and touched her.
 {¶ 28} The girl's mother testified that, after speaking to Miya Galloway, she discussed the matter with the girl then took her to stay with her grandmother. The mother then brought the girl to Kaiser for an examination in order to determine whether the girl had sex. At this time, the mother did not tell medical workers at Kaiser about the girl's allegations. Rather, she claimed that she had seen the girl coming out of a garage with a boy and wanted to determine whether they had sex. The results of the examination were inconclusive and the girl's grandmother later took the girl to the Hough-Norwood Clinic. After this examination, the woman confronted defendant. He denied molesting the girl.
 {¶ 29} The mother admitted that she let defendant stay in the house and installed a lock on the door of the girl's room.
 {¶ 30} The mother denied that defendant apologized for the molestation following the girl's baptism, and claimed that he had merely said that he was sorry that they were going through this issue. She also stated that after this time, she saw the girl sitting near defendant then asked the girl if she was okay. The girl eventually told her that something had happened but the mother did not go to the police.
 {¶ 31} In January 2004, after the police were notified, the mother spoke to Cleveland Police Det. Karl Lessman and social worker Ian Lucash. She denied telling the men that defendant had admitted the molestation.
 {¶ 32} On cross-examination, the woman stated that at various points in the marriage, she earned more money than defendant earned and that her job provided the family with benefits. The woman stated that defendant is the disciplinarian of the family and that on the day she learned of the girl's allegations from Miya, defendant made the girl wear a sweater on a hot day to punish her for dressing her younger sister in an outfit that was too warm for the weather.
 {¶ 33} The woman also stated that, approximately two months earlier, she had asked the girl whether anyone had ever made a sexual advance toward her or done anything to make her uncomfortable, and the girl stated that no one had.
 {¶ 34} After learning of the girl's complaints, the woman took her for the medical examinations because she was not sure that the girl was being truthful.
 {¶ 35} The woman also stated, on cross-examination, that the girl did not give her a precise date on which the abuse started and could not tell her the number of times that the conduct occurred.
 {¶ 36} Alecia Burns, a guidance counselor at the girl's school, testified that in January 2004, she learned from a security guard that the girl brought a knife to school. Following a suicide protocol, Burns spoke to the girl. The girl was upset and began to cry. She reported that her stepfather had been touching her, and that she was sad because nothing had been done. Burns referred the girl to the school psychologist and also called the Department of Children and Family Services.
 {¶ 37} Psychologist Christine Burke testified that the girl related to her that she was depressed and upset because her stepfather, who had been touching her and was kicked out, had been permitted to move back into the house.
 {¶ 38} County social worker Ian Lucash testified that he responded to the girl's school with Det. Lessman. They then undertook an investigation and instructed defendant to move out of the home.
 {¶ 39} Pastor Eloise Corbin testified that the girl's grandmother asked her to speak with the girl and that they had a confidential discussion of things that had been bothering her.
 {¶ 40} Det. Lessman testified that he is assigned to the Sex Abuse and Child Abuse Unit of the Cleveland Police Department. On January 29, 2004, Lucash provided him with a copy of a 696-KIDS referral that had been made in this matter and he and Lucash went to the girl's school to meet with her. Lessman observed as Lucash interviewed the girl. The men then met with the girl's mother and told her that they had received information which was consistent with sexual abuse. The woman stated that she had learned of the allegations during the previous year, and explained that she had the girl examined for abuse. Lessman then spoke with defendant over the telephone. According to Lessman, defendant stated that he knew what he had done was wrong, and expected to go to jail but wanted to have another chance to be with his family.
 {¶ 41} On February 1, 2004, defendant appeared for a meeting with Lessman and was arrested.
 {¶ 42} Miya Galloway testified that she and the girl are cousins and best friends. In the previous year, while they were at summer camp, the girl began to cry and told her that her stepfather had been touching her. Miya reported the matter to the girl's mother who arrived at the camp later that day.
 {¶ 43} The court subsequently dismissed Counts 88-99, the furthermore clauses were deleted from Counts 67-73, the dates of Counts 1-66 were amended to contain the dates June 8, 2002 to June 8, 2003, and the dates of Counts 67-73 were amended to June 8, 2003 to July 4, 2003.
 {¶ 44} Defendant elected to present evidence and offered testimony from the girl's mother, and also testified on his own behalf.
 {¶ 45} The girl's mother testified that, following the call to police, the girl was examined and a rape kit was prepared. It did not yield evidence of a forced sexual act.
 {¶ 46} Defendant testified that he is married to the girl's mother, and is the disciplinarian of the family. He stated that he felt stress and confusion upon learning of the girl's allegations from his wife and mother-in-law and decided to leave the home to "step away" from the situation. After a week or so, he moved back.
 {¶ 47} On the day of the girl's baptism, he apologized to the family for the situation. He denied that he apologized for molesting the girl, and he stated that he has consistently maintained his innocence.
 {¶ 48} Defendant stated that he moved out a second time after his wife found him in the basement with the girl. According to defendant, they were just talking but the girl falsely told her mother that he had inappropriately touched her. A few weeks later, he again returned to the family home. At this time, he noticed that locks had been installed on various doors but he did not attribute this to the allegations. He moved out a third time after the police became involved in the matter. Finally, defendant denied making any admissions to Det. Lessman and stated that the girl's allegations were untrue.
 {¶ 49} Defendant was convicted of all counts. Defendant was sentenced to concurrent life sentences on Counts 1-22, concurrent four-year sentences on Counts 23-44, concurrent seven year sentences on 45-66, and seven-year sentences on Counts 67-73, to be served concurrent with the four-year terms, but consecutive to the life sentences. The court also determined that defendant is not a sexual predator, but rather, an aggravated sexually oriented offender by operation of law. Defendant now appeals and assigns five errors for our review.
 {¶ 50} Defendant's first and second assignments of error are interrelated and state:
 {¶ 51} "Appellant Hemphill was denied his federal and state due process rights to notice as the offenses were not charged with sufficient specificity."
 {¶ 52} "Appellant Hemphill's convictions of Rape, Gross Sexual Imposition and Kidnapping were not supported by sufficient evidence."
 {¶ 53} Within these assignments of error, defendant asserts that there was insufficient evidence as the charges were undifferentiated and not subject to individual proof. Thus, defendant complains, he was convicted of a generic pattern of abuse in an "all or nothing" fashion, rather than convicted of specific, separately proven offenses. He further asserts that there is insufficient evidence to support the convictions.
 {¶ 54} With regard to the first claim, we note as an initial matter, that it is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity. SeeState v. Daniel (1994), 97 Ohio App.3d 548, 556, 647 N.E.2d 174.
 {¶ 55} Nonetheless, the Sixth Amendment right to be informed of the nature and cause of an accusation requires that a criminal defendant be provided with information concerning all of the elements of the offense charged. In general, an indictment is constitutionally adequate if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States (1974),418 U.S. 87, 117, 41 L. Ed.2d 590, 94 S. Ct. 2887; United States v. Maney
(6th Cir. 2000).
 {¶ 56} A corollary purpose of the requirement that an indictment set out the specific offense is described as the "judicial review" function.United States v. Landham (6th Cir. 2000), 251 F.3d 1072. That function has been described by the Supreme Court as "informing the [trial] court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." Id. (quotingUnited States v. Cruikshank, 92 U.S. 542, 23 L. Ed. 588 (1876) and citing Wayne R. LaFave, et al., 4 CRIMINAL PROCEDURE, § 19.2(d), at 753-54 (1999). Accord United States v. Superior Growers Supply, Inc. (6th Cir. 1993), 982 F.2d 173. Thus, individual offenses must be established with some degree of distinction. The United States Court of Appeals for the Sixth Circuit Court has explained the requirement in this fashion inValentine v. Konteh (6th Cir. 2005), 395 F.3d 626:
 {¶ 57} "The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places. If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.
 {¶ 58} "Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own. The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20. Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest. Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents. The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts. Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.
 {¶ 59} "As the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself." Id.
 {¶ 60} It must be noted, however, that the court's review on this issue is fact-specific, and individual counts will be considered separately and on their own merits. Id.
 {¶ 61} With regard to the sufficiency challenge, we note that when an appellate court examines a criminal conviction for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307,61 L. Ed.2d 560, 99 S. Ct. 2781.
 {¶ 62} Rape is defined in R.C. 2907.02(A) as follows:
 {¶ 63} "(A) (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 64} "* * *
 {¶ 65} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 {¶ 66} "* * *
 {¶ 67} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 68} "Kidnapping is defined in R.C. 2905.01
 {¶ 69} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 70} "* * *
 {¶ 71} "(4) To engage in sexual activity, as defined in section 2907.01
of the Revised Code, with the victim against the victim's will[.]"
 {¶ 72} Gross sexual imposition is defined in R.C. 2907.05 as:
 {¶ 73} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 74} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
 {¶ 75} "* * *
 {¶ 76} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 77} Force need not be overt and physically brutal, but can be subtle and psychological. State v. Eskridge (1988), 38 Ohio St.3d 56,526 N.E.2d 304. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. Id. A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint. State v. Dye,82 Ohio St.3d 323, 1998-Ohio-234, 695 N.E.2d 763.
 {¶ 78} Sexual contact is defined as the "touching of an erogenous zone of another, including the thigh, genitals, buttock, pubic region, or if the person is a female, a breast for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 79} In this matter, the state's evidence demonstrated that when the girl was in sixth grade, and twelve years-old, her stepfather, defendant, requested that she come to his bedroom to help him find some socks for work. At this time, he touched her chest.
 {¶ 80} The girl further stated that "[s]ometimes he would pull my pants down and he would take his private part inside of mine and have sex with me." (Tr. 212-213). The girl testified that she was 12 or 13 when this occurred. With regard to specific instances, she testified that the conduct occurred in defendant's bedroom after he had sent the other children outside to clean the van. She briefly mentioned reporting to others of incidents when defendant fell on her then had sex with her and she testified to another incident after her baptism which occurred when she slept in the basement.
 {¶ 81} The state also presented evidence that defendant would rub her chest "[a]ny chance he got" (Tr. 214), and put his mouth on her private part at least twice. Penetration was not established, however. State v.Falkenstein, Cuyahoga App. No. 83316 at 7, 2004-Ohio-2561; State v.Blankenship (Dec. 13, 2001), Cuyahoga App. 77900.
 {¶ 82} Apart from the foregoing, no additional evidence was offered as to actual numbers or specific incidents. Rather, the girl stated that he touched her inappropriately on any opportunity that he could do so, and the state offered this numerical estimate:
 {¶ 83} [By the prosecuting attorney:]
 {¶ 84} "Q. Do you — can you tell us as to whether or not he had vaginal sex with you, intercourse with you, on at least 33 times?
 {¶ 85} "A. Yes.
 {¶ 86} "Q. Would he — did he touch your breasts at least 33 times?
 {¶ 87} "A. Yes." (Tr. 215).
 {¶ 88} Although we can appreciate the difficulty of prosecuting a case involving a reticent victim who appears to be unsupported by her family, this cannot lessen the state's burden of proof as to each individual offense. Accordingly, inasmuch as our analysis is governed by the Court's holding in Valentine, supra, we cannot accept the numerical estimate which is unconnected to individual, distinguishable incidents. We therefore find that there is an insufficient factual basis for defendant's convictions on these unspecified offenses.
 {¶ 89} Our further review of the record establishes, however, that a rational trier of fact could have found the essential elements of gross sexual imposition beyond a reasonable doubt, from the first incident (involving defendant's request to get him socks).
 {¶ 90} We further conclude that a rational trier of fact could have found one offense of rape of the girl prior to her thirteenth birthday, with the furthermore clauses alleging force proven beyond a reasonable doubt. The evidence demonstrated that defendant put his private part into her private part and had sex with her at the time when he sent the other children outside to clean the van. The evidence also indicated that this and the ensuing chain of events were prior to the girl's thirteenth birthday.
 {¶ 91} We further conclude that a rational trier of fact could have found one offense of rape of the girl after her thirteenth birthday, with the furthermore clauses alleging force proven beyond a reasonable doubt. The girl testified that the defendant had sex with her when she went to the basement to sleep.
 {¶ 92} We find no evidence from which a rational trier of fact could convict defendant of kidnapping.
 {¶ 93} Accordingly, defendant's conviction for one count of gross sexual imposition, one count of rape of a girl under thirteen with the furthermore clause alleging force, and one count of rape with the furthermore clause alleging force, are all supported by sufficient evidence. We hereby vacate defendant's convictions for the remaining offenses.
 {¶ 94} Defendant's third assignment of error states:
 {¶ 95} "The offenses of kidnapping and rape, and the offenses of Gross Sexual Imposition and Rape are allied offenses under the facts of this case."
 {¶ 96} Within this assignment of error, defendant complains that his convictions for kidnapping must merge into his convictions for rape and his convictions for gross sexual imposition must be merged into his convictions for rape. Inasmuch as defendant's kidnapping convictions have been vacated, we will address only the second portion of this assignment of error.
 {¶ 97} If the indictment contains two or more allied offenses of similar import, a defendant may only be convicted of one. R.C. 2941.25(A). However, if the defendant's conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, a defendant may be convicted of all of them. R.C. 2941.25(B).
 {¶ 98} Gross sexual imposition and rape may, depending on the circumstances, be allied offenses of similar import. For instance, it is well established that gross sexual imposition is a lesser included offense of rape. State v. Johnson (1988), 36 Ohio St.3d 224, 226,522 N.E.2d 1082; State v. Jones (1996), 114 Ohio App.3d 306, 325,683 N.E.2d 87. Accordingly, under R.C. 2941.25, a defendant may generally not be convicted of and sentenced for both gross sexual imposition and rape when they arise out of the same conduct. Id.
 {¶ 99} With regard to the offense of gross sexual imposition of which defendant stands convicted, the state presented evidence that defendant called the girl into his room to look for socks then touched her chest and the girl testified that he did not force her to engage in intercourse at this time. Accordingly, this offense is not allied with any other offense and does not merge into any other conviction.
 {¶ 100} The third assignment of error is without merit.
 {¶ 101} Defendant's fourth assignment of error states:
 {¶ 102} "The trial court erred by allowing the prosecutor to ask the appellant about the credibility of other witnesses."
 {¶ 103} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. State v. Gest (1995), 108 Ohio App.3d 248, 257,670 N.E.2d 536. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982), 455 U.S. 209,71 L. Ed.2d 78, 102 S. Ct. 940. The effect of the prosecutor's misconduct must be considered in light of the whole trial. State v. Durr (1991),58 Ohio St.3d 86, 94, 94, 568 N.E.2d 674; State v. Maurer (1984),15 Ohio App.3d 239, 266, 473 N.E.2d 768.
 {¶ 104} The prosecution must avoid insinuations and assertions which are calculated to mislead the jury. Berger v. United States (1935),295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L.Ed. 1314. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Thayer (1931),124 Ohio St. 1, 9 Ohio Law Abs. 734, 176 N.E. 656; DR 7-106(C)(4) of the Code of Professional Responsibility. However, prosecutors are entitled to latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence, State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668 citing, State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293, and this court has previously determined that a prosecutor may cross-examine a witness about testimony which contradicts that of the witness. State v. Skipper, Cuyahoga App. No. 81963, 2003-Ohio-3531. Accord State v. Chaney (Aug. 28, 1997), Cuyahoga App. No. 71274 (it is within the trial court's discretion to allow the prosecution, on cross-examination, to inquire whether another witness is lying). See, also, State v. Garfield (1986),34 Ohio App.3d 300, 303, 518 N.E.2d 568.
 {¶ 105} In this case, we cannot say that the prosecutor's questions on cross-examination were improper. The prosecutor questioned the defendant regarding the contradictory testimony of several witnesses who testified earlier in the trial. The questions that the prosecutor posed were asked to impeach the defendant's credibility. The questions did not express the prosecuting attorney's personal belief or opinion as to the credibility of a witness or as to the guilt of the accused and cannot be considered calculated to mislead the jury.
 {¶ 106} This assignment of error is without merit.
 {¶ 107} Defendant's fifth assignment of error states:
 {¶ 108} "The trial court failed to make the proper findings when imposing a consecutive sentence."
 {¶ 109} In imposing consecutive prison terms for convictions of multiple offenses, the trial court must make certain findings enumerated in R.C. 2929.14(E)(4). According to this statute, a court may impose consecutive sentences only when it concludes that the sentence is (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the court finds one of the following: (a) the crimes were committed while awaiting trial or sentencing, under sanction or under post-release control; (b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. R.C. 2929.14(E).
 {¶ 110} The trial court must also state its reasons on the record, supporting each finding. State v. Comer, 99 Ohio St.3d 463, 469,2003-Ohio-4165. Moreover, "a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Id. These findings and reasons must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision. Id., citing, Griffin 
Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.Res.L.Rev. 1, 12.
 {¶ 111} In this matter, the state concedes that the trial court did not make all of the required findings in support of consecutive sentences. Accordingly, this assignment of error is well-taken.
 {¶ 112} Defendant's conviction for one count of gross sexual imposition, one count of rape of a child under thirteen with a furthermore clause alleging force, and one count of rape with a furthermore clause alleging force are affirmed. The remainder of the convictions are vacated and the matter is remanded for re-sentencing.
It is ordered that appellee and appellant split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and Corrigan, J., Concur.
[1] We refer to the child by her initials pursuant to this court's established policy regarding non-disclosure of identities in cases of this nature.