JOURNAL ENTRY and OPINION
Appellant Calvin Nettles appeals his conviction for assaulting a peace officer. He assigns the following three errors for our review:
"I. The trial court erred in allowing testimony regarding other acts of the defendant and reputation of the defendant as a previous drug dealer."
"II. The trial court erred in sentencing Mr. Nettles to a term of incarceration beyond the minimum where Mr. Nettles did not admit to serving a prior term of incarceration and the fact was not found beyond a reasonable doubt by a jury."
"III. The trial court failed to make a finding that the defendant's sentence is consistent with similarly situated offenders."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Nettles' conviction. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Nettles on two counts of assault of a peace officer, one count of drug possession, and one count of drug trafficking. Nettles entered a not guilty plea; the matter proceeded to a jury trial.
 {¶ 4} The evidence presented at trial revealed that on June 19, 2004 at approximately 8:30 p.m., Officers Christopher Ereg and Matthew Gallagher responded to a report of drug activity in the area of East 93rd and Amesbury Avenue. This area is a high drug trafficking area. As the officers approached the intersection in their zone car, they observed a group of males standing in a parking lot. Upon seeing the officers, the group of men fled.
 {¶ 5} Officer Ereg suspected that drug trafficking was taking place. He, therefore, parked the police vehicle in the area of East 97th Street and Lamont Avenue and walked towards the parking lot. As the officers approached the fence surrounding the parking lot, they observed what appeared to be a hand-to-hand transaction between two males on the other side of the fence. Specifically, the officers observed a male crouched near the ground, making a dipping motion with a cigarette. Cigarettes laced with PCP are known as "wet." They then observed the cigarette being exchanged for money.
 {¶ 6} The officers described the buyer as a heavy-set African-American male wearing a white T-shirt. The seller was described as an African-American male wearing a tan jacket, black pants, and of average height and weight. After the transaction was completed, the males walked in opposite directions. Due to the height of the fence, the officers could not apprehend the men; therefore, they returned to their vehicle and attempted to locate them.
 {¶ 7} The officers drove around the block, but were unable to find the suspects. The officers returned to the area of the drug transaction where they recovered two vials of suspected PCP, partially buried in the ground. Next to the PCP was a 9mm handgun.
 {¶ 8} After confiscating the evidence, the officers drove around the block again looking for the suspects. As they returned to the scene, they observed Nettles, who matched the description of the drug dealer, looking in the area where they had retrieved the PCP vials. Nettles was wearing a tan jacket and black pants. When Nettles observed the officers, he attempted to walk past them and through a gap in the fence.
 {¶ 9} Officer Ereg ordered Nettles "to come here." Nettles, however, continued walking and attempted to slide between the officer and another parked vehicle. Officer Ereg then ordered Nettles to "stop." When Nettles failed to comply, Officer Ereg grabbed him. Nettles responded by swinging his fists, striking Officer Ereg in the face with a closed fist. The officer was also struck in the shoulder and chest. Officer Ereg punched Nettles once in order to subdue him. At that time, Officer Gallagher assisted by tackling Nettles. All three men fell to the ground as Nettles continued to swing his arms.
 {¶ 10} Nettles then held his arms underneath his body as the officers attempted to subdue him. Fearful that Nettles had a weapon, Officer Ereg threatened to spray Nettles with pepper spray if he did not put his hands behind his back. He also ordered Nettles to stop resisting. Nettles ignored both commands. Instead, he kicked Officer Gallagher in the chest. Thereafter, Officer Ereg sprayed Nettles with pepper spray. The officers were then able to gain control of Nettles and placed him under arrest.
 {¶ 11} Dwayne Smith, a longtime friend of Nettles, testified in Nettles' behalf. According to Smith, he and Nettles were playing chess in the parking lot when the officers arrived. He admitted there were several people selling drugs in the parking lot. Smith claims he and Nettles continued to play chess after the officers arrived and the crowd dispersed. According to Smith, the officers left the area for about 15 minutes. When Nettles went to urinate in the fence area of the parking lot, the officers drove over to Nettles. The officers then grabbed Nettles and tackled him to the ground when he attempted to pull away. Smith stated that Nettles did not punch Officer Ereg and did not kick Officer Gallagher.
 {¶ 12} Based on the above evidence, the jury found Nettles guilty of assaulting Officer Ereg. The jury found Nettles not guilty of assaulting Officer Gallagher, drug possession, and drug trafficking. After considering Nettles' extensive prior record, the trial court sentenced Nettles to seventeen months in prison.
 OTHER ACTS EVIDENCE {¶ 13} In his first assigned error, Nettles argues the trial court erred by permitting evidence of an "other act" into evidence in violation of Evid.R. 404(B). The other act evidence consists of Smith's testimony that Nettles was a former drug dealer.
 {¶ 14} Evid.R. 404(B) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 15} We find that the admission of the evidence regarding Nettles' prior drug dealing does not fall under any of the exceptions to the admission of evidence under Evid.R. 404(B). However, in spite of this, an error in the admission of "other act" testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction.[1] Nettles has failed to convince this court that the jury considered his prior drug dealing when it found him guilty of assaulting a peace officer. In fact, in spite of evidence of his prior drug dealing, the jury found Nettles not guilty of drug possession and drug trafficking.
 {¶ 16} Further, although Nettles' friend Smith testified that Nettles did not assault the officers, both officers testified that Nettles assaulted Officer Ereg. Therefore, even without testimony about Nettles' prior drug dealing, a reasonable jury could conclude Nettles was guilty. Thus, the admission of this evidence did not contribute to Nettles' conviction and merely amounted to harmless error. Accordingly, Nettles' first assigned error is overruled.
 NON MINIMUM SENTENCE {¶ 17} In his second assigned error, Nettles argues his non minimum sentence violates the United States Supreme Court's opinion in Blakelyv. Washington[2] because a jury did not determine whether he had served a prior prison term.
 {¶ 18} This argument has been addressed in this court's en banc decision of State v. Atkins-Boozer.[3] In Atkins-Boozer, we held that R.C. 2929.14(B), which governs the imposition of non minimum sentences, does not implicate the Sixth Amendment as construed in Blakely.
Therefore, in conformity with that opinion, we reject Nettles' contention that his sentence violates Blakely.
 {¶ 19} Moreover, the record indicates that Nettles has served three prior prison terms. His own attorney admitted to the court that Nettles had "served several prior prison terms."[4] Therefore, the trial court's decision to impose more than the minimum sentence is in accordance with R.C. 2929.14(B). Accordingly, Nettles' second assigned error is overruled.
 INCONSISTENT SENTENCE {¶ 20} In his third assigned error, Nettles argues the trial court erred by failing to make a finding that Nettles' sentence is consistent with the sentences of other similarly situated offenders.
 {¶ 21} R.C. 2929.11 requires that the sentencing judge be guided by "the overriding purposes of felony sentencing," which are to protect the public from future crime and to punish the offender.[5] Accordingly, the trial court's sentence should be reasonably calculated to achieve these purposes, mindful of the seriousness of the offender's conduct and its impact upon the victim, and consistent with other sentences imposed for similar conduct by similar offenders.[6]
 {¶ 22} While R.C. 2929.11(B) mandates that a sentence be "consistent with sentences imposed for similar crimes committed by similar offenders," we have held that the goal of the statute is to achieve "consistency" not "uniformity."[7] The court is not required to make express findings that the sentence is consistent with other similarly situated offenders.[8] We have also found that in order to support a contention that his or her sentence is disproportionate to sentences imposed upon other offenders, a defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal.[9]
 {¶ 23} Nettles did not raise in the trial court that his sentence was disproportionate to sentences given to other offenders with similar records, who have committed the same offense. Nor did he present evidence as to what a "proportionate sentence" might be. Therefore, he has not preserved the issue for appeal.
 {¶ 24} Moreover, the record indicates that Nettles has an extensive record, having been previously convicted of drug possession, drug trafficking, and two counts of having a weapon while under disability. He was also just released from prison several months prior to committing the instant offense. The trial court considered this history in sentencing Nettles to seventeen months. Accordingly, Nettles' third assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J., and Kilbane, J., CONCUR.
[1] Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705. See, also State v. Lytle (1976), 48 Ohio St.2d 391.
[2] (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.
[3] (May 31, 2005), Cuyahoga App. No. 84151, 2005-Ohio-2666.
[4] Tr. at 374.
[5] R.C. 2929.11(A).
[6] R.C. 2929.11(B).
[7] State v. Klepatzki, Cuyahoga App. No. 81676, 2003-Ohio-1529; Statev. Bolton, Cuyahoga App. No. 80263, 2002-Ohio-4571.
[8] State v. Richards, Cuyahoga App. No. 83696, 2004-Ohio-4633; Statev. Harris, Cuyahoga App. No. 83288, 2004-Ohio-2854; State v. Austin,
Cuyahoga App. No. 84142, 2004-Ohio-5736.
[9] State v. Woods, Cuyahoga App. No. 82789, 2004-Ohio-2700; State v.Mercado, Cuyahoga App. No. 84559, 2005-Ohio-3429; State v. Breeden,
Cuyahoga App. No. 84663, 2005-Ohio-510; State v. Austin, Cuyahoga App. No. 84142, 2004-Ohio-5736.