JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Richard Knight, appeals the judgment of the Cuyahoga County Court of Common Pleas with respect to his conviction, sentence, and sexual predator classification. For the reasons stated herein, we affirm.
 {¶ 2} On September 7, 2006, the Cuyahoga County Grand Jury returned a sixteen-count indictment charging Knight with four counts of rape, three counts of gross sexual imposition, one count of kidnapping, two counts of felonious assault, four counts of aggravated burglary, and two counts of aggravated robbery. The rape and kidnapping counts contained a sexually violent predator specification. The case proceeded to a jury trial.
 {¶ 3} On January 12, 2007, the jury found Knight guilty of two counts of rape, one count of gross sexual imposition, one count of kidnapping, one count of felonious assault, and two counts of aggravated burglary. Knight was found not guilty on the remaining counts.
 {¶ 4} On February 9, 2007, the trial court held a sexual offender classification and sentencing hearing. The trial court found Knight to be a sexual predator. At sentencing, the trial court merged the two aggravated burglary charges and sentenced Knight to ten years on each of the two rape counts, ten years on the merged aggravated burglary counts, ten years on the kidnapping count, eight years on the felonious assault count, and eighteen months on the gross sexual imposition count. The trial court ordered the terms to be served consecutively, for a total prison *Page 4 
term of forty-nine years and six months. The trial court also found Knight to be a sexual predator pursuant to R.C. 2950.09. Knight timely filed this appeal.
 {¶ 5} The underlying facts of the case, as adduced from the testimony at trial, are as follows:
 {¶ 6} The victim testified that in late July 2006 she was living with her father and his girlfriend, Eugena Rogers, and Rogers' two children. At the time, the victim was seven and one-half months pregnant, and her pregnancy had been going well.
 {¶ 7} On or about July 24, 2006, Knight, who is Rogers' brother, began staying in the household. The victim had never met Knight before. It was the victim's understanding that Knight would be staying for only a few days.
 {¶ 8} On the night of July 26, 2006, the victim arrived home around 10:00 p.m. Her father had already left for work. Rogers went to pick up Knight around 11:30 p.m., and they arrived home around midnight. Around that time, the victim went upstairs to her room and went to bed. She closed the door to her room; however, it was not locked because the lock did not work.
 {¶ 9} The victim testified that around 1:00 a.m., she was awakened when Knight came into her room, put a knife to her throat, and put his hand over her mouth. Knight told the victim, "If you make any noise, I'll hurt you. I'll kill you." He also told her that if she did not do what he said, he would stab her in the stomach and kill the baby. *Page 5 
 {¶ 10} Knight told the victim to take her clothes off, and the victim told him no. Knight then forced her clothes off and forced her to have oral sex with him. The victim indicated that Knight had a knife in one hand and he grabbed her by the hair with his other hand. She stated that the forced oral sex lasted for one and one-half to two hours and that during this time Knight touched her breast and stuck his fingers in her vagina and her rectal area. During this episode, Knight was smoking crack cocaine. The victim testified that she could taste the crack when Knight tried to kiss her. She could also smell the crack.
 {¶ 11} After a while, Knight threw the victim onto the bed. The victim was thrown onto her stomach and then flipped onto her back. The victim felt a sore spot, which she later learned was her placenta pulling away from her uterine wall. Knight then inserted his penis into her vagina and ejaculated.
 {¶ 12} The victim denied ever agreeing to have sex with Knight. She stated that every time she got close to the wall, she made as much noise as she could and would bang on the wall. The victim also indicated that she bit Knight on his penis. Although Rogers' bedroom was next to the victim's bedroom, Rogers was asleep with the television on. The victim indicated that her door was shut and that she was not able to hear the television when the door was closed.
 {¶ 13} When the sexual activity finally ended, Knight forced the victim to put her clothes on. The victim observed Knight take money from Rogers' purse, which the victim stated was in her room. Knight placed the purse in Rogers' bedroom *Page 6 
doorway as he was leaving. Knight was carrying the knife in his hand and was holding the victim by her hair. The two went downstairs, where Knight grabbed a change of clothes and wiped the knife clean.
 {¶ 14} Knight then forced the victim to walk outside of the house with him and down the street to the corner. He told the victim, "[F]or what it's worth, I'm sorry it had to be you, but I don't belong out here." The victim then ran home, woke up Rogers, and told her what had happened. The police were called to the scene.
 {¶ 15} The victim was taken to the hospital where a rape kit was performed. During the examination, the victim began bleeding. She also was having contractions and had to be taken to the "OB" area to monitor her pregnancy. The victim was kept in the hospital for two days while she continued to have contractions that were treated with medication.
 {¶ 16} Several photographs were introduced of the crime scene and of the victim. One of the photographs depicted a cut on the victim's lip that was caused by the forced oral sex. Another photograph depicted a mark that was left on the victim's neck from the knife. Also, a photograph was introduced of a knife that the victim identified as the knife that was held to her throat and with which Knight had threatened to stab the victim in the stomach.
 {¶ 17} Rogers testified that Knight is her brother and was staying in the house with them. She stated that on the night of the incident she picked up Knight and drove him home from a bar. She went up to her bedroom around 12:30 a.m. *Page 7 
Rogers indicated that at that time, the victim was in her bedroom and Knight was downstairs on the couch watching television. Rogers fell asleep with the television on.
 {¶ 18} Rogers stated that she awoke around 3:00 a.m., when the victim came into her bedroom screaming that Knight had raped her. She described the victim as crying, shaking, and visibly upset. Within minutes, the police were called. Rogers also called the victim's father. Rogers went with the victim to the hospital. Rogers did not hear from Knight following the incident.
 {¶ 19} Rogers testified that when she went to her bedroom that night, she brought her purse with her and put it next to her bed by the nightstand. When she was awakened by the victim, Rogers discovered that her purse had been moved to the doorway and that $120 was missing.
 {¶ 20} The victim's father testified that he was working at the time of the incident. He received a telephone call shortly after 3:00 a.m. from Rogers and was told that the victim had been raped. When he arrived home, the police were interviewing the victim. He later went with the victim to the hospital. The victim's father stated that it was his understanding that Knight had committed the offense, that Knight did not return to the house after that evening, and that Knight did not indicate why he left that night.
 {¶ 21} Alison Rerko, a registered nurse at Fairview Hospital, testified that she is specially trained as a sexual assault nurse examiner. She performed a sexual *Page 8 
assault kit on the victim and collected evidence. Rerko stated the victim began complaining that her stomach was cramping and tightening up, and the victim was taken over to the labor and delivery department. Rerko testified to the victim's account of the incident taken during the medical evaluation that was consistent with the victim's testimony of events. While filling out an assault/abuse history form, Rerko stated that the victim indicated that she had incurred vaginal and anal penetration by the suspect's fingers and vaginal penetration by his penis. The victim also indicated she had been either kicked, licked and bitten on her mouth, neck and left breast. Rerko noted that the victim was tearful during the assault history and asked to take a break to compose herself. Rerko noted injuries to the victim, including a red mark to the left side of the victim's neck, red marks inside of the victim's lip, and a laceration at the victim's vaginal opening.
 {¶ 22} Detective Charles Judd testified that he responded to the scene of the incident. He observed that the victim was "very nervous, upset, very emotional, crying." The victim stated she had been raped by Knight. In the course of trying to locate Knight, Detective Judd called Knight's girlfriend but found her to be uncooperative.
 {¶ 23} Detective Charles Teel of the Cleveland Police Scientific Investigation Unit testified that he arrived at the house and photographed the scene. He identified the photographs for the court. One of the photographs was of the knife found in the *Page 9 
kitchen. Detective Teel indicated that he was unable to lift fingerprints from the knife.
 {¶ 24} Detective Alan Strickler of the Cleveland Police Department's Sex Crimes Unit testified that he was assigned to do a follow-up investigation. He indicated that Knight was apprehended on August 5, 2006 at an apartment in Lakewood, Ohio. Strickler met with Knight on August 7, 2006, and Knight agreed to provide DNA samples. The samples were sent to the Ohio Bureau of Criminal Identification and Investigation ("BCI") for DNA comparison testing.
 {¶ 25} Officer Dennis McCarthy of the Lakewood Police Department testified regarding the arrest of Knight. Officer McCarthy stated that he and other Lakewood police officers, including a canine unit, arrested Knight at an apartment building in Lakewood. More specifically, Knight was found in a nearby garage "ducked under the front of the car." Knight was turned over to the Cleveland police.
 {¶ 26} Brenda Gerardi, a forensic biologist of the DNA section of the BCI, testified that she had examined the physical evidence collected in this case. She detected the presence of semen on vaginal and anal swabs taken from the victim at the hospital.
 {¶ 27} Melissa Zielkaskiewicz, a forensic scientist in the serology/DNA section of the BCI, testified that she analyzed the vaginal swabs and DNA standards taken from the victim and the DNA standard taken from Knight. The non-sperm profile of the vaginal swab matched the profile of the victim, while the sperm profile of the *Page 10 
swab matched the DNA profile of Knight. Zielkaskiewicz testified that the probability of finding another living being with the same profile of Knight was 1 in 2 quintillion, 215 quadrillion individuals.
 {¶ 28} Following the state's case, Knight took the stand in his own defense. He testified that he was released from jail on June 28, 2006, and he began staying at his sister's house on July 24, 2006, where he slept on the couch. He indicated that he was working as a roofer.
 {¶ 29} Knight stated that on July 26, 2006, he went to a bar after work and drank beer and whiskey. He called his sister to pick him up and arrived at her house around 11:30 p.m. Knight stated that Rogers went to bed. He indicated that the victim had gone upstairs, but then she came back down and was watching television with him. He stated that the two began talking and then started "making out." Knight claimed he did not force the victim to do anything. He indicated that he should have said no and walked away, but he was drunk and smoking weed. He stated that they ended up going to the victim's room and having sex. Knight denied forcing the victim to have sex, denied grabbing her hair, and denied having a knife. He claimed the sex was consensual.
 {¶ 30} Knight stated that he was in the victim's room for twenty minutes to one-half hour and that he then went to the basement and was getting high. He claimed the victim went downstairs and "flipped out" about him smoking in the house. Knight stated that the two argued, that he ended up leaving the house, that the victim *Page 11 
followed him out the door, and that he ended up catching a bus. Knight stated he went to an apartment on Lake Avenue in Lakewood where a friend of his lived.
 {¶ 31} As to the arrest, Knight stated that when he heard the police coming, he ducked under the front of the car because he had not reported to his parole officer and did not want to get caught for that. Knight also denied taking $120 from Rogers' purse.
 {¶ 32} The matter is now before us for review. Knight has raised five assignments of error. His first assignment of error provides as follows:
 {¶ 33} "I. The evidence was insufficient to support convictions for felonious assault."
 {¶ 34} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 35} Knight argues that there was insufficient evidence to support the conviction for felonious assault. More specifically, he claims that there was no evidence that the victim suffered serious physical harm as defined in R.C. 2901.01(A). *Page 12 
 {¶ 36} The felonious assault charge stated that Knight "knowingly caused serious physical harm to [the victim]." R.C. 2901.11(A)(2). "Serious physical harm to persons" is defined in relevant part as follows: "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; * * * (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; * * * (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(a), (c), (e).
 {¶ 37} Our review of the record reflects that there was evidence that the victim suffered serious physical harm. The victim testified that she was forcibly raped by Knight for one and one-half to two hours. During the episode, she was thrown onto her stomach, causing her placenta to tear away from the wall of her uterus. She also had marks on her neck from a knife being held to her throat, marks inside of her lip, and a laceration at her vaginal opening. In addition, the victim spent two days in the hospital suffering from the premature contractions.
 {¶ 38} After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that the victim suffered serious physical harm. Knight's first assignment of error is overruled. *Page 13 
 {¶ 39} "II. Appellant's convictions were against the manifest weight of the evidence."
 {¶ 40} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Leonard, 104 Ohio St.3d at 68.
 {¶ 41} Knight argues that the jury in this matter clearly lost its way and created a manifest miscarriage of justice in finding him guilty of two counts of rape, two counts of aggravated burglary, and one count each of gross sexual imposition, felonious assault and kidnapping. Knight claims that he had consensual sex with the victim. He also asserts that the victim's testimony that she was banging on the wall while she was being raped and bit Knight on his penis, without anybody hearing, was unbelievable.
 {¶ 42} As the state points out, this argument ignores the fact that Rogers testified she fell asleep with the television on, which could have drowned out any noise that might have been heard from the victim's bedroom. Further, our review of the entire record reflects that the victim's account of the attack was consistent as *Page 14 
reported to Rogers, the police, and medical personnel. Further, her account of the event was corroborated by physical evidence, including physical injury marks to her person as well as early contractions. There was also testimony that Knight left the scene and was not heard from until his arrest, at which time he was found hiding under the front of a car. We find that there was substantial evidence to support the jury's findings of guilt on the respective counts and that Knight's conviction was not against the manifest weight of the evidence. Knight's second assignment of error is overruled.
 {¶ 43} Knight's third assignment of error provides the following:
 {¶ 44} "III. The trial court erred by failing to merge the rape and kidnapping counts, and the rape and gross sexual imposition counts as allied offenses of similar import."
 {¶ 45} Knight argues that the trial court should have merged the rape and kidnapping offenses and the rape and gross sexual imposition offenses as allied offenses of similar import pursuant to R.C.2941.25(A).
 {¶ 46} R.C. 2941.25 states the following:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where a defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two *Page 14 or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 47} We first address the rape and gross sexual imposition offenses. We recognize that rape and gross sexual imposition may, depending on the circumstances, be allied offenses of similar import. See State v.Hemphill, Cuyahoga App. No. 85431, 2005-Ohio-3726. Further, a defendant may generally not be convicted of and sentenced for both gross sexual imposition and rape when they arise out of the same conduct. Id. However, simply because gross sexual imposition and rape may be allied offenses in one case does not mean that they are allied in every other case. See State v. Wozniak (May 23, 1996), Franklin App. No. 95APA03-345. There may be instances when a defendant may be convicted and sentenced for both charges.
 {¶ 48} In this case, according to the victim's testimony, Knight had groped her breast during the episode. Such conduct is separate from the conduct that constituted the rape offense. Here, the victim was penetrated both vaginally and anally, which conduct is separate and distinct from the conduct that constituted the gross sexual imposition offense. Thus, the court properly found that Knight committed gross sexual imposition when he groped the victim's breast and that this was done with a separate animus from the sexual contact that led to the conviction *Page 16 
for rape. See State v. Reid, Cuyahoga App. No. 83206, 2004-Ohio-2018. Accordingly, the trial court did not err in sentencing Knight as to both rape and gross sexual imposition.
 {¶ 49} Next, we consider the rape and kidnapping offenses. Rape and kidnapping can be allied offenses of similar import. In determining whether rape and kidnapping are allied offenses of similar import, the "primary issue * * * is whether the restraint or movement of the victim [which forms the basis of the kidnapping charge] is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." State v. Logan (1979),60 Ohio St.2d 126, 135.
 {¶ 50} In this case, the victim testified that after the rape was over, appellant grabbed her by the hair, forced her to go downstairs, and forced her to walk outside of the house with him and down the street to the corner. Thus, even if Knight's restraint of the victim in her bedroom during the rape is viewed as incidental to the rape, the restraint on her movement after the rape was completed was not. SeeState v. Parker, Mahoning App. No. 03-MA-190, 2005-Ohio-4888. Because the rape and the kidnapping each had a separate animus, the court did not err in failing to merge their sentences.
 {¶ 51} Knight's third assignment of error is overruled.
 {¶ 52} Knight's fourth assignment of error provides the following: *Page 17 
 {¶ 53} "IV. The trial court erred by sentencing the appellant to maximum consecutive sentences."
 {¶ 54} Knight argues that the trial court failed to state that it considered the purposes and principles of felony sentencing of R.C.2929.11 and erred by sentencing him without properly considering R.C.2929.11 and R.C. 2929.12. Knight also claims the trial court failed to consider the proportionality of his sentence to other similarly situated defendants.
 {¶ 55} The overriding purposes of felony sentencing in Ohio "are to protect the public from future crime by the offender * * * and to punish the offender." R.C. 2929.11(A). Also, a felony sentence must be consistent with other sentences imposed for similar crimes, "reasonably calculated" to achieve the overriding purposes of felony sentencing, and "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim." R.C. 2929.11(B). While R.C.2929.11 states the objectives of felony sentencing, R.C.2929.12 identifies a nonexclusive list of factors relating to the seriousness of the offense and recidivism of the offender for the court to consider in imposing a sentence to meet those objectives.
 {¶ 56} This court has previously recognized that there is no requirement for judicial findings in either R.C. 2929.11 or R.C.2929.12, and that the trial court is required only to carefully consider the statutory factors before imposing its sentence. State v.Samuels, Cuyahoga App. No. 88610, 2007-Ohio-3904; State v. Edwards, *Page 18 
Cuyahoga App. No. 89181, 2007-Ohio-6068. Further, in State v.Foster, 109 Ohio St.3d. 1, 2006-Ohio-856, the Ohio Supreme Court emphasized that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."
 {¶ 57} In this case, the trial court presided over Knight's trial and heard the evidence in the case. At the sentencing hearing, the trial court reviewed the nature of the conduct that occurred and considered the seriousness of the acts involved. The court also considered Knight's criminal history and his statement. Finally, the court's sentence was within the statutory range for the offenses for which Knight stood convicted. From our review of the record, it is clear that the trial court considered the purposes and principles of felony sentencing and the seriousness and recidivism factors in the sentencing statutes in imposing Knight's sentence.
 {¶ 58} We are also unpersuaded by Knight's contention that the trial court erred by failing to consider the proportionality of his sentence. This court has previously found that "in order to support a contention that his or her sentence is disproportionate to sentences imposed upon other offenders, a defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal."State v. Edwards, supra; State v. Nettles, Cuyahoga App. No. 85637,2005-Ohio-4990. In this matter, Knight did not raise in the trial court that his sentence was *Page 19 
disproportionate to sentences given to other offenders with similar records, who have committed the same offense. Nor did he present any evidence as to what a "proportionate sentence" might be. Therefore, he has not preserved the issue for appeal.
 {¶ 59} Knight's fourth assignment of error is overruled.
 {¶ 60} Knight's fifth assignment of error provides as follows:
 {¶ 61} "V. The trial court erred by classifying the appellant as a sexual predator."
 {¶ 62} A sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E). During a sexual predator hearing, the court "shall determine by clear and convincing evidence whether the offender is a sexual predator." R.C. 2950.09(B)(3).
 {¶ 63} In making a sexual predator determination, a trial court should consider all relevant factors, which include, but are not limited to, the following: the offender's age, the offender's prior criminal record, the age of the victim, whether the sexually oriented offense for which sentence was imposed involved multiple victims, whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting, whether the offender has participated in available programs for sexual offenders, any mental illness or mental disability of the offender, the nature of the *Page 20 
offender's conduct and whether that conduct was part of a demonstrated pattern of abuse, whether the offender displayed cruelty during the commission of the crime, and any additional behavioral characteristics that contributed to the offender's conduct. R.C. 2950.09(B)(3);State v. Shields, Cuyahoga App. No. 85998, 2006-Ohio-1536.
 {¶ 64} In reviewing a sexual predator classification, this court's role is to determine whether the weight of the evidence supports the trial court's decision. "[A] trial court's determination in a sex-offender-classification hearing must be viewed under the civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, syllabus.
 {¶ 65} In this case, Knight argues that the record does not support a sexual predator classification because the state failed to establish by clear and convincing evidence that he is likely to engage in one or more sexually oriented offenses in the future. He points to several factors that weigh in his favor, including the following: his age; he has no prior convictions for sexual offenses; there were not multiple victims; he did not use drugs or alcohol to impair the victim; he never participated in a sex offender treatment program because he has never previously been convicted of a sexual offense; and he has no history of mental illness.
 {¶ 66} Although there are factors that favor Knight in this case, we nonetheless cannot ignore the other factors that are present and upon which the trial court relied *Page 21 
in reaching its determination. As we stated in State v. Butler, Cuyahoga App. No. 86554, 2006-Ohio-4492, "[t]he trial court may place as much or as little weight on any of the factors as it chooses; the test is not a balancing one. Nor does the trial court have to find the majority of the factors to be applicable to the defendant in order to conclude the defendant is a sexual predator."
 {¶ 67} In reviewing the record of the instant matter, it is clear that the trial court adhered to the statutory requirements. The court considered the evidence and testimony presented as well as the arguments of counsel. The court also addressed the factors enumerated in R.C.2950.09(B)(3), including the factors to which Knight referred. We note that, although Knight claims he had no history of mental illness, the trial court did review the court psychiatric clinic report, which indicated that Knight satisfied the diagnostic criteria for an antisocial personality disorder. The court also considered Knight's prior criminal record, which included a prior offense of violence; the age of the victim and the fact that she was seven months pregnant; the prolonged period of forced oral sex and the various sexual acts that were involved; and the fact that Knight had completed a prior sentence, had just been released from prison, and was being supervised by the parole board at the time of the offenses in this case.
 {¶ 68} Our review of the record demonstrates that the trial court's findings are supported by some competent, credible evidence. Accordingly, we find no error in *Page 22 
the trial court's sexual predator determination. Knight's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR. *Page 1