OPINION
{¶ 1} Plaintiff-appellant Leonard C. Bohanan appeals the February 2, 2005 Judgment Entry of the Delaware County Court of Common Pleas following a jury verdict in favor of defendant-appellee Farmers Insurance of Columbus, Inc.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In the March or April of 2001, a pole building owned by appellant, Leonard Bohanan collapsed. During this same time period, an ice and snow storm caused six to eight inches of snow to accumulate. Appellant did not witness the collapse, but asserts accumulated snow caused the roof to collapse.
 {¶ 3} Farmers Insurance of Columbus, Inc. (hereinafter "Farmers") insured appellant under a homeowner's policy. In October of 2002, appellant filed a claim with Farmers regarding the collapse of the pole building. Farmers denied the claim.
 {¶ 4} On November 15, 2002, appellant filed a complaint against Farmers claiming breach of contract. A jury trial commenced on November 18, 2003. At the conclusion of appellant's case, Farmers moved for a directed verdict claiming appellant failed to produce expert testimony as to the building's condition and reason for collapse. The trial court granted the motion. On November 19, 2004, appellant filed a motion for reconsideration. The trial court journalized the decision granting the directed verdict, via Judgment Entry, on November 24, 2004. Appellant appealed.
 {¶ 5} On appeal, this Court affirmed, in part, and reversed, in part, the November 24, 2004 Judgment Entry. This court affirmed the trial court's decision excluding plaintiff from testifying as an expert, and reversed and remanded the trial court's decision granting a directed verdict.
 {¶ 6} On February 1, 2005, this matter proceeded to a second jury trial. Appellant called himself and his wife as witnesses. Farmers moved for a directed verdict, which the trial court overruled. Farmers called Gary Wilhelm, P.E. and Jean Courter to testify. Both were admitted as experts.
 {¶ 7} Farmers retained Gary Wilhelm, a Professional Engineer, to investigate the cause of the collapse. Wilhelm testified the building collapsed due to structural defects. During Wilhelm's testimony, he produced photographs taken during his inspection. Appellant objected, claiming the photographs had not been previously turned over in discovery. Farmers maintains the photographs presented at trial were on a digital format, copied to one document. The photographs produced to appellant were slightly blown-up, larger, and attached to Wilhelm's report. The trial court overruled appellant's objections to the photographs. Notwithstanding the trial court decision, Farmers eventually withdrew all exhibits from admission.
 {¶ 8} On February 2, 2005, appellant requested the court issue a curative instruction regarding the exhibits. The court offered the curative instruction. Appellant also requested the trial court read a passage from State of Georgia v. Brailsford (1794), 3 U.S. 1, as part of the instructions to the jury. The trial court overruled the request. On February 2, 2005, the jury returned a unanimous verdict in favor of Farmers.
 {¶ 9} Appellant now appeals, assigning as error:
 {¶ 10} "I. ON PAGE (144) OF THE TRANSCRIPT, LINES 14-25, THE COURT ERRORED [SIC] FOR ALLOWING EXHIBIT C TO BE PLACED INTO EVIDENCE. THE DEFENDANTS WERE INTRODUCING FALSES DOCUMENTS, BECAUSE THE PLAINTIFF ASKED FOR EVERYTHING THAT HE EVEN THOUGHT HE WAS GOING TO PRODUCE AND THE ONLY THING THE DEFENDANTS PRODUCED TO PLAINTIFF WERE DEFENDANT'S EXHIBITS MARKED C-1 C-2 C-3. BUT WHEN DEFENDANT'S EXHIBITS PRODUCED THEIR EVIDENCE IN COURT, IT WAS ALTOGETHER DIFFERENT PHOTOGRAPHS THAT THE PLAINTIFF NEVER SAW BEFORE. AND THAT WAS PLAINTIFF'S OBJECTION, AND THE COURT OVERRULED IT. THE COURT WAS READING PLAINTIFF'S FIRST SET OF PRODUCTION OF DOCUMENTS TO THE DEFENDANTS, AND THE COURT STILL OVERRULED PLAINTIFF'S OBJECTION. SEE PLAINTIFF'S EXHIBIT D.
 {¶ 11} "II. ON PAGE (47) OF THE TRANSCRIPT, LINES 14-25, AND ON PAGE (148), LINES 1-25, THE COURT ERRORED [SIC.] WHEN IT CONTINUED TO ALLOW THE FRADULENT PHOTOGRAPHS TO ENTER INTO EVIDENCE, OVER PLAINTIFF'S OBJECTION.
 {¶ 12} "III. ON PAGE (149) OF THE TRANSCRIPT, LINES 19-21, THE COURT ERRORED [SIC] BECAUSE DEFENDANTS HAVE NEVER PRODUCED #2126 PHOTOGRAPH. IT IS UNCONSTITUTIONAL TO PRODUCE FRADULENT EVIDENCE.
 {¶ 13} "IV. ON PAGE (152) OF THE TRANSCRIPT, LINES 11-21, THE COURT ERRORED [SIC] BY ALLOWING MR. WILHELM, A CONSTRUCTION ENGINEER TO GIVE AN EXPERT OPINION ON THE WEATHER, OVER PLAINTIFF'S OBJECTION.
 {¶ 14} "V. ON PAGE (174) OF THE TRANSCRIPT, LINES 1-21, THE COURT ERRORED [SIC] BY ALLOWING MRS. COURTER TO TESTIFY AS AN EXPERT WITNESS. NOTHING ON RECORD PROVES THAT SHE HAS A DEGREE IN THE EXPERTISE FIELD OF THE INSURANCE AGENCY.
 {¶ 15} "VI. ON PAGE (189) OF THE TRANSCRIPT, LINES 1-25, AND PAGE (190), LINES 1-25, AND PAGE (191), LINES 1-25, AND PAGE 192), LINES 1-25, AND PAGE (193), LINES 1-25, AND PAGE (194), LINES 1-25, AND PAGE (195), LINES 1-25, AND PAGE (196), LINES 1-16, THIS IS THE SUMMARY OF ALL THE ERRORS THAT THE COURT PERMITTED IN THE DEFENDANTS PHOTOGRAPHS, WHICH AFTER THE PLAINTIFF HAD BEEN PREJUDICED BY THEIR FALSE EVIDENCE, WHICH IS UNCONSTITUTIONAL AND AGAINST THE FOURTEENTH AMENDMENT, WHICH GUARANTEES PLAINTIFF AN UNBIASED TRIAL OF DUE PROCESS.
 {¶ 16} "VII. ON PAGE (201) OF THE TRANSCRIPT, LINES 7-25, AND ON PAGE (202), LINES 1-25, THE COURT ERRORED [SIC] FOR NOT GIVING THE JURY THE RIGHT JURY INSTRUCTIONS, OVER PLAINTIFF'S OBJECTION, WHICH PLAINTIFF WILL ELABORATE ABOUT IN HIS CLOSING ARGUMENT."
 {¶ 17} Initially, we note, each of appellant's assignments of error raises an issue relating to the admission of evidence at trial or the trial court's instructions to the jury. However, appellant's merit brief centers upon an alleged violation of his due process rights due to racial discrimination and a biased jury, depriving him of the "enjoyment and happiness of life which [the] constitution guarantees . . ." Appellant asks this court to remand this matter due to a biased and prejudiced jury. However, appellant has failed to separately assign as error racial discrimination or jury bias as required by App. R.16(A)(3). Accordingly this Court need not address this argument.
 {¶ 18} Nevertheless, we note upon our independent review of the record and the evidence, we find appellant has not demonstrated actual racial prejudice or jury bias warranting a new trial.
 {¶ 19} We now turn to the assignments of error specifically raised in appellant's merit brief.
 I, II, III, VI {¶ 20} The admission or exclusion of evidence lies within the sound discretion of the trial court. The trial court has broad discretion in determining the admissibility of evidence, and unless there is an abuse of discretion, the trial court's decision will not be disturbed. Pottsv. Cinemark USA, 2003-Ohio-7110. In order to find an abuse of discretion, the plaintiff bears the burden of demonstrating the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 21} Appellant's first, second, third and sixth assignments of error assert the trial court improperly admitted photographs taken by Gary Wilhelm. As noted supra, Farmers admits the photographs were submitted into evidence at trial in a different format than provided to appellant. However, appellant did possess the photographs prior to trial. Accordingly, we would find appellant has not demonstrated prejudice even had the photographs formally been admitted into evidence.
 {¶ 22} As noted supra, Farmers withdrew all the exhibits introduced at trial, including all the photographs. Appellant requested the trial court offer a curative instruction to the jury regarding the exhibits, which the trial court granted. The trial court instructed the jury:
 {¶ 23} "Ladies and gentleman of the jury, yesterday afternoon after you left we took upon the matter of exhibits and exhibit C was withdrawn, therefore, you are instructed as a matter of law you must strike that from your memory; Do not consider exhibit C in your deliberations. Exhibit C was the set of photographs."
 {¶ 24} Appellant did not object to the instruction. Nor, more significantly, did appellant request any further curative instruction or move for a mistrial.
 {¶ 25} Appellant's first, second, third and sixth assignments of error are overruled.
 IV and V {¶ 26} Appellant's fourth and fifth assignments of error relate to the testimony of Farmers' expert witnesses. Appellant's brief fails to comply with Appellate Rule 12(A)(2), by not arguing each assignment separately in the brief. Appellant does not separately assert any argument with regard to his fifth assignment of error other than merely listing it as an assigned error. For this reason alone we could disregard it pursuant to App. R.12(A)(2).
 {¶ 27} As to appellant's fourth assignment of error, the following exchange took place at trial as to the admission of Mr. Wilhelm as an expert:
 {¶ 28} "A. I'm a building and plans examiner. I review plans on commercial buildings like schools and hospitals for compliance of building code.
 {¶ 29} "Q. During the year 2002, where were you employed?
 {¶ 30} "A.N.C.R. Engineering, Delaware, Ohio.
 {¶ 31} "Q. Did you have a title at N.C.R. Engineering?
 {¶ 32} "A. I was a structural engineer.
 {¶ 33} "Q. How long were you employed at N.C.R.?
 {¶ 34} "A. From 1986, until about nine months ago.
 {¶ 35} "Q. Can you tell the members of the jury what N.C.R. Engineering Consultants does with services they provide?
 {¶ 36} "A. They provide and still do provide typical engineering services: they provide sizing of beams, footings; they also analyze structures that had defects to determine what caused the defects; what can be done to correct the defects.
 {¶ 37} "* * *
 {¶ 38} "A. That's a resume of my qualifications, it's not totally current, but it's probably one that is current at that time.
 {¶ 39} "Q. I want to go through your educational background briefly, if you will. Did you go on to college?
 {¶ 40} "A. I did my undergraduate degree at the University of Cincinnati, with a Bachelor of Science and Engineering. And then subsequently I attended Ohio State University; My masters degree work was also in engineering.
 {¶ 41} "Q. Are you a member of any professional affiliations?
 {¶ 42} "A. Yes. I'm licensed in the State of Ohio, and the State of Michigan as a professional structural engineer. I'm a member of the American Society of Civil Engineers, Ohio Society of Professional Engineers, and the National Society of Professional Engineers. I'm the past-president of the Southern Ohio Chapter of Ohio Society of Professional Engineers, and I'm a member of I.C.C. The International Code of Counsel, the people who write most building codes.
 {¶ 43} "* * *
 {¶ 44} "Q. Do you have any experience in building and contracting?
 {¶ 45} "A. Yes. I held a, previously held a license as in the City of Columbus as a general contractor.
 {¶ 46} "Q. Now, in this case you were asked to provide an opinion as to the cause of a building collapse located at 6512 Harriott Road, Powell, Ohio?
 {¶ 47} "A. Yes, I was.
 {¶ 48} "Q. How many times in your entire professional experience have you been asked to provide an opinion like that?
 {¶ 49} "A. I stopped counting at 8,000, so I really don't know how many there have been. But as far as that specific type of failure such as a collapse, I estimate maybe 80 to 100 times. I don't know the exact number.
 {¶ 50} "Q. You ever done any lectures or taught any classes?
 {¶ 51} "A. Yes.
 {¶ 52} "Q. Briefly tell us about that.
 {¶ 53} "A. I teach seminars on a fairly frequent basis to various organizations, including building officials, engineers, inspectors and the state of Ohio, that are certified by the state to do inspections. I have been approved to teach these classes by the Ohio State Board of Building Standards. I also teach classes to various home inspection organizations, both on a local and national level.
 {¶ 54} "* * *
 {¶ 55} "Mr. Sway: Your honor, before we talk about exhibit B, I'd like to move to admit Mr. Wilhem as an expert witness in the area of structural engineering.
 {¶ 56} "The Court: Any objection, Mr. Bohanan?
 {¶ 57} "Mr. Bohanan: I'm having difficulty understanding him and Mr. Wilhem both, your honor. I don't —
 {¶ 58} "The Court: Keep your voice up, Mr. Sway and Mr. Wilhelm. Any objection to — any objection to Mr. Wilhelm being considered by the court as an expert?
 {¶ 59} "Mr. Bohanan: No, I have no objection to that, your honor."
 {¶ 60} Tr. at 134-139.
 {¶ 61} Upon review, appellant did not object to Mr. Wilhelm's qualification as an expert, and based upon his testimony, we conclude the trial court did not abuse its discretion in admitting Mr. Wilhelm as an expert.
 {¶ 62} At trial, Mr. Wilhelm testified:
 {¶ 63} "Q. Mr. Wilhelm, Mr. Bohanan has stated in his opening statement that this building collapsed because of the weight of ice and snow. Do you have any opinion concerning that statement?
 {¶ 64} "A. Well, a building of ice and snow within limited quantities are a normal event. So —
 {¶ 65} "Q. Certainly a normal event in central Ohio?
 {¶ 66} "A. Yes, it is.
 {¶ 67} "Q. As we found out over the last few months?
 {¶ 68} "A. A building is suppose to withstand reasonable amounts of ice and snow. In Ohio, at the time of previous building codes, that would have been in effect at the time this building was analyzed, it's suppose to be able to hold twenty-five pounds per square foot, which is about four feet of snow or about five or six inches of ice, depending on how dense it is.
 {¶ 69} "So, you know, as being involved in the industry at that time, of course, I was keenly aware of what you know, if he had any sort of events like this, I would have known about them because you always are sensitive, if you are doing those types of analysis, you know. Also you know a bad weather condition, you know, as in tornados.
 {¶ 70} "Mr. Bohanan: Your honor, I object to this testimony, it's not his expertise.
 {¶ 71} "The Court: Overruled. You may proceed.
 {¶ 72} "Mr. Wilhelm: So, also no building is isolated from the weather. I know no other buildings in that area, you know, were in fact to see driving down the road, other buildings had not been effected by ice and snow. We had not had unusual amounts of ice and snow. And at the time I wrote this report I was under the impression that this event occurred in 2002. I subsequently found out that the event actually occurred, reported to, occurred in 2001. Of course 2001 was a drought year. We didn't get a lot of snow and rain then. And in fact many buildings were having problems because of the drought that year."
 {¶ 73} Tr. at 151-153.
 {¶ 74} On cross-examination, the following exchange took place:
 {¶ 75} "By Mr. Bohanan:
 {¶ 76} "Q. 6512 Harriott Road, my electric never went out. They had ice and snow, downed trees broken all over the place. Seventeen miles, isn't it a fact Mr. Wilhelm, it's more than seventeen miles where you live to my shop?
 {¶ 77} "A. Yes, sir, I think so.
 {¶ 78} "Q. Then you don't know, do you?
 {¶ 79} "A. Yes, sir. I'm familiar with, at that time, I was doing those types of investigations, I was familiar with weather conditions generally throughout Ohio. And when I wasn't I could find it on the national weather bureau information database.
 {¶ 80} "Q. Mr. Wilhelm, it's a proven fact over Christmas, seventeen miles down from my house, all the lights went out, trees down all over the place. That's a fact. And we are talking about forty or fifty miles, you are going to predict weather up someplace else. They do it in seventeen miles, it's possible to do in fifty or sixty miles. Isn't that a reasonable probability?
 {¶ 81} "A. Do you have a question I missed?
 {¶ 82} "Q. My question was, if the weather can change in seventeen miles, then wouldn't it be feasible for it to change in seventy-five miles?
 {¶ 83} "A. Well, the weather can change sir, but an ice storm don't arbitrarily effect only one home, not one structure. It occurs in a vicinity."
 {¶ 84} Tr. at p. 157-158.
 {¶ 85} Appellant argues the trial court improperly allowed the testimony of Mr. Wilhelm because he was not an expert on the weather. Upon review, Mr. Wilhelm's testimony related to his investigation on the cause of the collapse, not his experience as a weather expert. The challenged testimony goes to Mr. Wilhelm's personal knowledge of facts, not his expert opinion. Appellant was provided the opportunity to challenge Mr. Wilhelm's testimony concerning his observations and memory of weather patterns during the time of the collapse. Mr. Wilhem's credibility as to this testimony was up to the trier of fact. We find the trial court did not abuse its discretion in allowing this testimony.
 {¶ 86} Appellant's second expert, Jean Courter, is a Branch Claims Supervisor for Farmers. At trial, the following exchange took place:
 {¶ 87} "Q. Ms. Courter, during the month of March of 2001, did you insure the plaintiff's residence?
 {¶ 88} "A. Yes.
 {¶ 89} "Q. Was there ever a claim submitted by the plaintiff for damage to a pole barn or pole building located at this residence?
 {¶ 90} "A. Yes.
 {¶ 91} "Q. Do you recall when this claim was submitted?
 {¶ 92} "A. In October of 2002.
 {¶ 93} "Q. Ms. Courter, did your company conduct an investigation?
 {¶ 94} "A. Yes, we did.
 {¶ 95} "Q. Before we get into you investigation, I want to go over your background and qualifications for the court and jury, in the insurance industry as an insurance industry representative. Ms. Courter, where did you go to college?
 {¶ 96} "A. Ball State University.
 {¶ 97} "Q. Did you receive a degree from Ball State?
 {¶ 98} "A. Yes, I did.
 {¶ 99} "Q. And how long have you been employed in the insurance industry?
 {¶ 100} "A. Going on thirteen years.
 {¶ 101} "Q. Has that always been with Farmers?
 {¶ 102} "A. Yes, it has.
 {¶ 103} "Q. Have you handled property damage claims in your nineteen years as an employee of Farmers?
 {¶ 106} "A. Yes.
 {¶ 107} "Q. Can you estimate how many you have handled?
 {¶ 108} "A. Thousands.
 {¶ 109} "Q. Any property damage claims such as the one that is the subject of this lawsuit?
 {¶ 110} "A. Yes.
 {¶ 111} "Q. Do you have any professional designations?
 {¶ 112} "A. Yes.
 {¶ 113} "Q. Tell the jury what that is?
 {¶ 114} "A.I.N.S. and A.I.C.
 {¶ 115} "Q. Briefly, what did you have to go through to get the designation of I.N.S. and A.I.S.
 {¶ 116} "A.I.N.S. designation is three insurance courses and A.I.C. three or four.
 {¶ 117} "Q. Are you familiar with all of the requirements, regulations and laws that govern insurance claims handled in the state?
 {¶ 118} "A. Yes.
 {¶ 119} "Q. You are familiar with this claim?
 {¶ 120} "A. Yes.
 {¶ 121} "Q. You are familiar with the policy which is marked exhibit 1?
 {¶ 122} "A. Yes.
 {¶ 123} "Mr. Sway: Your honor, I move to admit Ms. Courter as an expert in the insurance claims handling.
 {¶ 124} "The Court: Any objection, Mr. Bohanan?
 {¶ 125} "Mr. Bohanan: I object, your honor.
 {¶ 126} "The Court: Overruled. You my [SIC] proceed."
 {¶ 127} Tr. at 172-174.
 {¶ 128} Again, appellant's brief fails to separately set forth specific argument on this assigned error. Upon review, we find the trial court did not abuse its discretion in admitting Ms. Courter as an expert, and her testimony properly related to her experience and knowledge of the insurance industry.
 {¶ 129} Appellant's fourth and fifth assignments of error are overruled.
 {¶ 130} In the seventh assignment of error, appellant maintains the trial court abused its discretion in failing to include his proposed jury instruction when instructing the jury. Again, we review appellant's assignment of error under an abuse of discretion standard.
 {¶ 131} Appellant requested the trial court include a passage from a 1794 U.S. Supreme Court case, State of Georgia v. Brailsford (1794),3 U.S. 1. The passage states:
 {¶ 132} "It is presumed, that juries are the best judges of facts; it is, on the other hand, presumably, that the courts are the best judges of law. But still both objects are within your power of decision; you have a right to take upon yourselves to judge both, and to determine the law as well as the fact in controversy."
 {¶ 133} The trial court provided the following instruction to the jury:
 {¶ 134} "* * * Ladies and gentlemen, you have heard the opening statements of counsel, the evidence, closing arguments of counsel, it now becomes my duty to call your attention to the questions that you must pass upon and instruct you as to the law applicable to this case.
 {¶ 135} "As I am sure you can appreciate, you and I have separate and distinct functions to perform in the trial of this or any other lawsuit. It is your function to decide the disputed facts, and it is my function to provide to you the appropriate instruction of the law. It is your sworn duty to accept these instructions of the law and to apply the law as it is given to you.
 {¶ 136} "You are not permitted to change the law nor apply your own conception of what you think the law should be, for you to do so would amount to you engaging in a legislative function rather and performing your sworn duty as jurors.
 {¶ 137} "In deliberating on this case, you, the jury, will apply these instructions of law to the evidence and you will weigh the evidence and you will determine the facts of this case. You, members of this jury, are the sole and exclusive judges of the facts, and the weight of the evidence and the credibility of the witnesses."
 {¶ 138} In Hickman v. Jones (1869), the United States Supreme Court addressed the separate and distinct duties of the trial court and the jury:
 {¶ 139} "The instruction given overlooked the line which separates two separate spheres of duty. Though correlative, they are distinct, and it is important to the right administration of justice that they should be kept so. It is as much within the province of the jury to decide questions of fact as of the court to decide questions of law. The jury should take the law as laid down by the court and give it full effect. But its application to the facts — and the facts themselves — it is for them to determine. These are the checks and balances which give to the trial by jury its value. Experience has approved their importance. They are indispensable to the harmony and proper efficacy of the system. Such is the law. We think the exception to this instruction was well taken."
 {¶ 140} Upon review, the trial court properly instructed the jury. Appellant's seventh assignment of error is overruled.
 {¶ 141} The February 2, 2005 Judgment Entry of the Delaware County Court of Common Pleas is hereby affirmed.
Hoffman, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellant.