OPINION *Page 2 
{¶ 1} Appellant Trevor Teagarden appeals his convictions of one count of rape and three counts of gross sexual imposition. The State of Ohio is plaintiff-appellee.
 STATEMENT OF THE CASE AND FACTS {¶ 2} Appellant was indicted on July 9, 2007, on one count of rape of a minor under the age of 13, in violation of R.C. 2907.02(A)(1)(b), three counts of gross sexual imposition with a child victim under the age of 13, in violation of R.C. 2907.05(A)(4), and one count of attempted gross sexual imposition with a child victim under the age of 13, in violation of R.C. 2923.02(A), the attempt statute, and R.C. 2907.05(A)(4).
 {¶ 3} Appellant proceeded to a trial by court, having waived his right to trial by jury. The facts adduced at trial are as follows:
 {¶ 4} On June 29, 2007, Appellant was at the residence of Jesse Sharrock, a longtime friend. Several people resided at Sharrock's residence in June, 2007, including Sharrock's partner, Henry Strong, Sharrock's sister, Shawna Sharrock, her minor son, F.S., and Sharrock's minor daughters, D.S., age 12, and A.S., age 10.
 {¶ 5} During the afternoon hours of June 29, 2007, Appellant arrived at the Sharrock residence. Jesse testified that he had spoken with Appellant several days prior to June 29 and knew that Appellant was going to stop by the residence on that day.
 {¶ 6} A.S. testified that she knew Appellant because he was a friend of her dad's. She stated that when Appellant arrived at the house, she was making macaroni and cheese with her sister and F.S. *Page 3 
 {¶ 7} Later that evening, the kids decided to watch a couple of movies. The first movie that they put in, "Norbit," was playing when Appellant asked A.S. to sit with him on the couch. A.S. testified that she went to sit on the couch with Appellant, and that she was wearing a tank top with a built in shelf-bra and a pair of pajama pants. Appellant pulled a blanket over A.S. up to her shoulders and began playing with her hair and rubbing her back.
 {¶ 8} According to A.S., Appellant was laying behind A.S. when he started rubbing her belly and when he began touching the elastic band of her bra under her tank top. A.S. testified that this made her uncomfortable so she went to get a drink of water and then sat on the floor with F.S.
 {¶ 9} After "Norbit" finished playing, the kids put the movie, "Epic Movie" on. A.S. stayed on the floor with F.S., and Appellant asked D.S. to sit on the couch with him. D.S. testified that he told her to "come over here and keep me warm."
 {¶ 10} When D.S. sat on the couch with Appellant, he pulled a blanket over her up to her shoulders. D.S. testified that she was also wearing a tank top with a shelf-bra and pajama pants. According to D.S., Appellant began playing with her hair, rubbing her belly underneath her shirt, touching her breasts underneath her shirt but over her bra, and then put his hand down her pajama pants and touched her vagina, both inside and out. She stated that she knew he touched the inside of her vagina because it burned. He also told her to turn over and then touched her buttocks.
 {¶ 11} As he was touching D.S., he made several comments to her, including, "Do you like that?", "You're really mature for your age," "How many boyfriends do you have?" and "Can we kiss?" *Page 4 
 {¶ 12} D.S. testified that she was "really scared" and that she tried to get F.S.'s attention and mouthed the word "help" to him, but that he did not see her.
 {¶ 13} Henry arrived home from work while Appellant was on the couch with D.S. He testified that he observed them laying on the couch together and that they had a blanket covering both of them up to their shoulders.
 {¶ 14} At some point, Shawna told the kids to go upstairs to bed. Shawna testified that she had taken some Percocets at some point that evening because of her broken ankle and that she fell asleep during the movies, but she thought she woke up around 2:00 a.m. to tell the kids to go to bed. The kids went upstairs and A.S. went into the bathroom. When she exited the bathroom, she saw her sister hugging F.S. She said her sister was crying and looked "scared."
 {¶ 15} D.S. told F.S. what had happened and stated that "Trevor touched me in inappropriate places." She stated that they were trying to be quiet when they were talking about it because they did not want Appellant to hear them. After D.S. told A.S. and F.S. what had happened, the kids made a plan to throw a glass dolphin at Appellant if he came up the stairs. F.S. wrote a note to his mom, which stated, "Trevor was touching [D.S.] in the wrong spot and was asking her some questions." F.S. then took the note downstairs and tried to get his mom's attention, but she could not see what was on the note and did not find out what happened until later the next morning.
 {¶ 16} The kids decided not to wake Jesse up because he had to work in the morning. Appellant was still at the residence when Jesse went to bed between 8:00 and 8:30 p.m. Jesse stated that in the past, he had had problems with Appellant refusing to go home in the evenings and that he sometimes overstayed his welcome. *Page 5 
When Jesse woke up the next morning, Appellant was asleep on the loveseat in the living room. Shawna was asleep on the other couch because her broken ankle rendered her partially immobile.
 {¶ 17} When Henry woke the kids up the next morning, F.S. told him what had happened. Henry called Jesse and told him what had occurred. Jesse spoke briefly to D.S., who was crying, and then talked to Shawna and told her to tell Appellant to leave, but then changed his mind and told Henry to keep him there while they called the police.
 {¶ 18} While Henry called the police, Shawna confronted Appellant about the allegations. Appellant stated that he didn't think that he had touched the girls inappropriately. Shawna stated that right after she asked Appellant about the allegations, he got up and went into the bathroom. She stated that she heard water running in the bathroom for two to three minutes while Appellant was in there. When Appellant exited the bathroom, he was acting "fidgety" and "nervous."
 {¶ 19} When Jesse arrived home, he spoke with D.S., and then took her to a medical appointment in Newark, where she was examined by Leslie Dieterich, a pediatric nurse practitioner at Licking Memorial Pediatrics, who also worked at "The Kid's Place," which is a medical facility where children are seen for suspected physical and sexual abuse. Dieterich testified that her exam of D.S. yielded mostly normal results, with the exception of an abraded fourchet, which was later determined to be unrelated to the alleged assault.
 {¶ 20} When taking D.S.'s medical history, D.S. informed Dieterich that she was there because "A guy named Trevor, my dad's best friend, wanted to snuggle with me, so I did." *Page 6 
 {¶ 21} Dieterich asked D.S. about any sexual assault and D.S. stated that "he had started playing with her hair and then rubbing me and when I asked where he was rubbing her she pointed across her lower abdomen and stated here and then went down. And when I asked for clarification on that, what she meant when she said he went down, she stated that he went down under her underwear."
 {¶ 22} Dieterich testified that D.S. informed her that Appellant "put his hand inside her vaginal and anal areas." Dieterich then testified that she did not observe any evidence of trauma to D.S.'s genital area, but that based on her examination and interview, her diagnosis was that D.S. had been sexually assaulted.
 {¶ 23} Detective Mark Phillips of the Heath Police Department arrived at the Sharrock residence and observed Lieutenant Vermillion speaking to Appellant outside of the residence. Lieutenant Vermillion testified that when he was speaking to Appellant outside of the residence, Appellant stated that he wanted to go home the night before, but that the others (Henry, Shawna, and Jesse) asked him to stay. Appellant further stated that it wasn't "unusual for Jesse to get rid of old boyfriends" and that "this should not have happened and that he should have gone home."
 {¶ 24} Detective Phillips asked Appellant to return to the Heath Police Department to speak with him and Appellant voluntarily agreed to do so. Heidi Ballengee, an intake social worker at Licking County Children's Services, sat in on the interview with Appellant. While speaking with Detective Phillips and Ms. Ballengee at police headquarters, Appellant confirmed that he was at the Sharrock residence watching movies with D.S., A.S., F.S., and Shawna Sharrock, and he admitted to having physical contact with A.S. and D.S., but stated that the contact was nonsexual in nature. *Page 7 
He stated that he had been brushing the girls' hair and admitted to sitting on the couch with both of the girls. During the interview, Appellant stated that D.S. had kissed him on the lips. According to Detective Phillips, Appellant did not claim that there were any problems between any member of Jesse Sharrock's family and himself and he denied ever having a romantic relationship with Jesse Sharrock.
 {¶ 25} Detective Phillips asked Appellant to submit to DNA sampling and Appellant originally refused to do so, but at a later time, complied with the request.
 {¶ 26} Max Larijani, a forensic scientist assigned to the DNA serology unit at the Ohio Bureau of Criminal Identification and Investigation (BCI), testified that he examined the DNA samples submitted by the Heath Police Department in this case. In examining the DNA samples from Appellant's left and right hands, he determined that no foreign DNA was detectable.
 {¶ 27} Appellant testified on his own behalf and confirmed that he has known Jesse Sharrock since they were in high school. He stated that A.S., D.S., and F.S. were lying when they testified that A.S. and D.S. were laying down on the couch with Appellant. He stated that, at most, both A.S. and D.S. were on the couch with him for ten minutes each. He also denied ever getting up off the couch and going to the bathroom from the time they started watching movies until he left to go to the police station the next day.
 {¶ 28} Appellant stated that Shawna was up the whole time the kids were downstairs and that he and Shawna talked for "hours and hours" He testified that A.S. and D.S. both fell asleep on the floor while he and Shawna were on the couches and *Page 8 
that Shawna was lying when she stated that she fell asleep. Appellant stated that he had taken at least four Percocets and some Xanax that evening.
 {¶ 29} After trial, the court found Appellant guilty of one count of rape, and three counts of gross sexual imposition, as they related to D.S. The court found Appellant not guilty of the count of attempted gross sexual imposition as it related to A.S. The court sentenced Appellant to seven years on the count of rape and sentenced him to two years on each count of gross sexual imposition. The court ordered that the sentences on the counts of gross sexual imposition were to be served concurrent to each other, but consecutive to the rape. He also informed Appellant that upon his release from prison, he would be classified as a Tier III sexual offender.
 {¶ 30} Appellant raises twelve Assignments of Error:
 {¶ 31} "I. THE DEFENDANT-APPELLANT'S JURY WAIVER WAS UNKNOWING, UNINTELLIGENT AND INVOLUNTARY.
 {¶ 32} "II. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF INCOMPETENT EVIDENCE.
 {¶ 33} "III. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF OTHER-ACTS EVIDENCE.
 {¶ 34} "IV. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF HEARSAY IN VIOLATION OF THE RIGHT OF CONFRONTATION.
 {¶ 35} "V. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF EXPERT TESTIMONY WHICH SPECULATED CONCERNING THE LACK OF DNA EVIDENCE. *Page 9 
 {¶ 36} "VI. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF LAY/EXPERT TESTIMONY CONCERNING THE CREDIBILITY OF CHILD WITNESSES.
 {¶ 37} "VII. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY PROSECUTORIAL MISCONDUCT.
 {¶ 38} "VIII. THE VERDICT/JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 39} "IX. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 40} "X. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE INABILITY TO CONFRONT A PROSECUTION WITNESS CONCERNING THAT WITNESS' BIAS TOWARD HIM.
 {¶ 41} "XI. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY CUMULATIVE TRIAL ERROR.
 {¶ 42} "XII. THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT-APPELLANT TO CONSECUTIVE, NON-MINIMUM SENTENCES AND IN LABELING HIM A SEXUAL PREDATOR."[1]
 I. {¶ 43} In Appellant's first assignment of error, he argues that his jury waiver was not knowing, voluntary and intelligent because the trial court did not advise him of his right to a unanimous jury verdict, his right to participate in jury selection, his right to *Page 10 
peremptory and for cause challenges, and his right to have the facts of his case tried solely to a jury.
 {¶ 44} Ohio Revised Code 2945.05 governs the waiver of the right to a jury trial. R.C. 2945.05 states, "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I ___, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."
 {¶ 45} This jury trial waiver is required to be made in open court after the defendant has been arraigned and after he has had opportunity to consult with counsel and may be withdrawn by the defendant at any time before the commencement of the trial. Id.
 {¶ 46} Provided that the waiver is written, signed by the defendant, made in open court and filed with the court, "[t]he Criminal Rules and the Revised Code are satisfied" State v. Jells (1990), 53 Ohio St.3d 22,26, 559 N.E.2d 464; see also State v. Lomax, 114 Ohio St.3d 350,2007-Ohio-4277, 872 N.E.2d 279. A written waiver is presumed to be voluntary, knowing, and intelligent. Lomax, at ¶ 10, citing State v.Bays (1999), 87 Ohio St.3d 15, 19, 716 N.E.2d 1126.
 {¶ 47} A trial court is not required to inform a defendant of all possible implications of a jury trial waiver. State v. Green (2000),90 Ohio St.3d 352, 367, *Page 11 738 N.E.2d 1208. There must only be some evidence in the record that the defendant acknowledged, in open court and in presence of counsel, if represented, that he desires to waive his right to a jury trial.Lomax, supra, at ¶ 42. In this case, the trial court asked Appellant whether Appellant had discussed the matter fully and completely with his attorney, to which Appellant replied "completely." The court also asked Appellant if he wished to waive his right to a jury trial, and Appellant affirmed that he did wish to do so. Appellant further stated that he had not been threatened to make the determination to waive his right to a jury trial and that he was waiving the right freely and voluntarily. He then signed a written waiver of trial by jury in open court, which was filed on February 21, 2008, prior to the commencement of trial.
 {¶ 48} This court has previously held that nothing in R.C. 2945.05
requires that a trial court engage in a colloquy with the defendant before accepting his waiver of a jury. Specifically, we found that there is no explicit requirement in Crim. R. 11(C)(2)(a) that a defendant be informed of his right to a unanimous verdict. State v. Molla, 5th Dist. No. 07-CA-140, 2008-Ohio-5331, at ¶ 19. Moreover, we held that "a defendant need not have a complete or technical understanding of the jury trial right in order to knowingly and intelligently waive it." Id. at ¶ 21, citing State v. Bays (1999),87 Ohio St.3d 15, 20, 716 N.E.2d 1126.
 {¶ 49} Accordingly, because Appellant did execute a valid waiver in open court, and because the court complied with the mandates of R.C. 2945.05, Appellant's first assignment of error is overruled. *Page 12 
 II. {¶ 50} In his second assignment of error, Appellant argues that he was denied the right to a fair trial based on the improper admission of "incompetent evidence." Specifically, Appellant claims that testimony from Detective Phillips and Social Worker Heidi Ballengee was improper because they did not identify Appellant in court.
 {¶ 51} Initially, we note that Appellant failed to object to this alleged error at trial. "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Campbell (1994),69 Ohio St.3d 38, 40, 630 N.E.2d 339, 344, quoting State v. Childs (1968),14 Ohio St.2d 56, paragraph three of the syllabus.
 {¶ 52} Accordingly, Appellant has waived all but plain error in this regard. State v. Hill (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274,279; Crim. R. 52(B). "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus, 372 N.E.2d 804. Plain error will not be found absent a showing by Appellant that "but for the error, the outcome of the trial clearly would have been otherwise."State v. Williams, 99 Ohio St.3d 439, 458, 2003-Ohio-4164, at ¶ 40, quoting Long, supra, at paragraph two of the syllabus.
 {¶ 53} Additionally, trial courts are granted broad discretion with respect to the admission or exclusion of evidence at trial. State v.Sage (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343, 348. Thus, an appellate court will not reverse a trial court's ruling absent an abuse of discretion. State v. Myers, 97 Ohio St.3d 335, 348, 2002-Ohio-6658, ¶ 75. *Page 13 
"The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 54} Moreover, this case was tried to the bench, rather than to a jury. "[I]n a bench trial, a trial court is presumed to have considered only the relevant, material and competent evidence." State v.Addison, 10th Dist. No. 03AP-1102, 2004-Ohio-5154, at ¶ 10, citing State v. Bays (1999), 87 Ohio St.3d 15, 28,716 N.E.2d 1126. Thus, we must presume that, even if testimony was erroneously admitted into evidence, the trial court did not consider it in rendering its verdict.
 {¶ 55} A witness is presumed competent to testify, under Ohio Evid. R. 601, unless they are (1) of unsound mind or are under 10 years of age; (2) a spouse testifying against the other spouse charged with a crime unless is against the testifying spouse or a child of the couple, or unless the testifying spouse elects to testify; (3) an officer in a misdemeanor traffic case who was using an unmarked car or not in uniform; or (4) a person giving expert testimony in limited civil liability claims against certain professionals. Ohio Evid. R. 602 permits people with personal knowledge of an incident to testify as to that knowledge.[2]
 {¶ 56} We would first note that Appellant admitted to speaking with Detective Phillips and Ms. Ballengee when Appellant testified, therefore identification of Appellant as the person who spoke with Detective Phillips and Ms. Ballengee is not in question. Any statements that Appellant made to these witnesses concerning the events that *Page 14 
occurred are not hearsay. See Evid. R. 801(D)(2)(a). While it may have been a best practice for these two witnesses to identify Appellant in court, that identification is unnecessary in this instance, as multiple other witnessed identified Appellant. Jesse Sharrock identified Appellant in court, as did A.S., D.S., and F.S. Lieutenant Vermillion, who was speaking to Appellant when Detective Phillips arrived on the scene, also identified Appellant in court.
 {¶ 57} Based on the foregoing, we do not find that the trial court erred in admitting the testimony of Detective Phillips and Heidi Ballengee.
 {¶ 58} Moreover, we do not find that the trial court erred in admitting testimony of Shawna Sharrock that she saw Appellant go into the downstairs bathroom and heard the water running in the bathroom for two to three minutes. Again, there was no objection to this testimony, so a plain error standard of review applies, as does the abuse of discretion standard regarding the admissibility of evidence. Shawna witnessed Appellant enter the bathroom, heard the water running, and then witnessed Appellant exit the bathroom several minutes later, acting fidgety and nervous.[3]
 {¶ 59} Appellant's second assignment of error is overruled.
 III. {¶ 60} In his third assignment of error, Appellant alleges that the trial court improperly admitted other acts evidence under Evid. R. 404(B). Specifically, Appellant complains that testimony by Jesse Sharrock that Appellant previously invited himself over prejudiced Appellant. There was no objection to this testimony, and we therefore review this claim under a plain error standard. Because the admission of this evidence *Page 15 
lies within the discretion of the trial court, we also review this claim under an abuse of discretion standard, as we previously noted.
 {¶ 61} Ohio Evid. R. 404(B) prohibits the admission of evidence of other crimes, wrongs, or acts used to prove the character of a person in order to show he acted in conformity therewith. Such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 62} We find that purpose of the State's line of questioning was to establish a history of Appellant's presence at the Sharrock house and to establish his relationship with the Sharrock family. In context of the trial, this statement did not prejudice Appellant, as Jesse also stated that he knew that Appellant would be stopping by on June 29, 2007, and that they had been friends since high school and saw each other regularly. Moreover, Appellant testified that he was invited to spend the night by Shawna and Henry, so if the court chose to, it could have believed Appellant's version of events.
 {¶ 63} Appellant's third assignment of error is overruled.
 IV. {¶ 64} Appellant argues in his fourth assignment of error that the trial court improperly admitted hearsay evidence. Appellant cites four instances of alleged hearsay that he claims prejudiced him during his bench trial, specifically: (1) the introduction of Appellant's alleged admissions through Detective Phillips and Heidi Ballengee, as he was never identified to the trier of fact as the same person who made the statements during the unrecorded interrogation; (2) the admission of D.S.'s reporting *Page 16 
of abuse to Jesse, A.S., F.S. and Henry under the "excited utterance" exception of Evid. R. 803(2); (3) the admission of D.S.'s statements through other witnesses[4]; and (4) the note written by F.S. to his mother which related the accusation made by D.S. against Appellant.
 {¶ 65} Hearsay is defined as a statement offered to prove the truth of the assertion by the declarant when the declarant was not on the witness stand at the time of the declaration. If a statement is offered for some reason other than the truth of the matter asserted, it is not hearsay. See Evid. R. 801. Statements made by a party-opponent are excluded from the hearsay rule. Specifically, as it relates to this case, a statement offered by a party against their opponent is admissible and is not hearsay provided the statement is the party's own statement.
 {¶ 66} Appellant first claims that statements made by him to Detective Phillips and Heidi Ballengee are hearsay because the detective and Ballengee did not identify him in court. We have already rejected this argument in Appellant's second assignment of error.
 {¶ 67} Regarding Appellant's argument that statements made by D.S. to A.S. and F.S. were not excited utterances, though we disagree because D.S. made the statements immediately after she was out of the sight of her attacker, we would also note that objections to these statements were sustained by the trial court, and therefore the statements were not admitted into evidence.
 {¶ 68} Regarding the letter that F.S. wrote to his mother, we first note that there was no objection to testimony about the note, nor was there an objection to the admission of the note into evidence. Accordingly, a plain error analysis again applies. *Page 17 
Moreover, as we previously stated, the law presumes that "in a bench trial the court considers only relevant, material, and competent evidence." State v. Bays (1999), 87 Ohio St.3d 15, 716 N.E.2d 1126
citing State v. Post (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754,759. While F.S.'s letter could be considered hearsay, we find that the admission of this letter was harmless error as the letter did not state anything that was not already in evidence through the testimony of D.S.
 {¶ 69} We further find that the statements that D.S. made to D.S.'s father and Henry were not hearsay, as they were not offered for the truth of the matter asserted. Rather, we find that these statements were used to show why D.S.'s father and Henry did what they did with respect to contacting the police and taking D.S. to the hospital for an examination.
 {¶ 70} Accordingly, Appellant's fourth assignment of error is overruled.
 V. {¶ 71} In his fifth assignment of error, Appellant claims that the trial court erred in admitting expert testimony concerning a lack of DNA evidence based on a hypothetical question asked by the prosecution. We disagree.
 {¶ 72} Again, the admission of evidence is within the purview of the trial court and the trial court's determination will not be reversed absent an abuse of discretion. Evidence Rule 705 permits an expert to give an opinion based upon a hypothetical question that presents the facts proven at trial. However, the question must fully and accurately state the facts. State v. Horton, 5th Dist. No. 2007-CA-00085, 2007-Ohio-6469, ¶ 125 citing Manley v. Coleman (1924), 19 Ohio App. 284, 295.
 {¶ 73} The hypothetical posed in this case was as follows: *Page 18 
 {¶ 74} "Q: Okay, I want to present with you a hypothetical example. In your experience at B.C.I., have you had occasion to have cases come in front of you that involved digital penetration of a rape victim?
 {¶ 75} "A: Yes.
 {¶ 76} "Q: Okay. And if someone were to digitally penetrate a victim, would we expect to find DNA on their hands immediately afterward?
 {¶ 77} "A: Yes.
 {¶ 78} "Q: Okay. DNA from the victim, correct?
 {¶ 79} "A: That is correct.
 {¶ 80} "Q: Are there factors that might intervene in the interim between the act occurring and the swab being taken that could affect the quality, quantity or the very presence of the DNA being there?
 {¶ 81} "A: Yes. There are many factors. For example, if there's a time elapse, the long period of time, and in between that person doing other stuff, so by that they just — just ordinary work, touching and handling other objects so the amount of DNA was deposited on their hands is going to diminish, and plus, if they wash their hand, by doing that they're going to wash any foreign DNA deposited on their hands.
 {¶ 82} "Q: Okay. So if a person were to touch other objects like their clothes, door knobs, car keys, steering wheels, that would all diminish the amount of foreign DNA on their hands?
 {¶ 83} "A: That is correct.
 {¶ 84} "Q: And if they were to wash their hands, would it be possible to wash away any evidence of DNA on their hands? *Page 19 
 {¶ 85} "A: That is possible."
 {¶ 86} These questions were based on facts that were admitted during the trial and therefore the hypothetical was proper.[5] Appellant's fifth assignment of error is overruled.
 VI. {¶ 87} In his sixth assignment of error, Appellant contends that the trial court improperly admitted testimony concerning the credibility of child witnesses. Specifically, Appellant lists four distinct instances where he believes that the trial court improperly allowed improper bolstering: (1) through the expert testimony of Nurse Dieterich; (2) through the testimony of Jesse A.S., F.S., and Henry regarding D.S.'s demeanor and reporting of the sexual assault allegations; (3) through the note written by F.S.; and (4) through the testimony of the social worker regarding the children not wanting to wake Mr. Sharrock to inform him of the assault.
 {¶ 88} Bolstering concerns presenting evidence to a jury in order to make a particular witness' statement appear more credible. We do not find that such testimony was presented in this case.
 {¶ 89} Medical professionals may testify as to the content of an interview with a patient following a physical examination pursuant to Evid. R. 803(4). See also State v. Stahl (2006), 111 Ohio St.3d 186,2006-Ohio-5486, 855 N.E.2d 834. Nurse Dieterich did not testify that D.S. was telling the truth. Nurse Dieterich conducted a medical examination on D.S. shortly after the assault and testified that part of the examination is *Page 20 
an oral accounting of the events that transpired so that she could determine whether injuries, or lack thereof, were consistent with what was alleged to have happened. She testified that D.S.'s report of the events that had transpired were consistent with the physical examination. She did not vouch for D.S.'s truthfulness and her testimony did not add to the credibility of D.S.'s statements. We find that her testimony was not offered as proof of D.S.'s allegations, as was the testimony in the case of State v. Yarber (1995), 102 Ohio App.3d 185, which was cited by Appellant.
 {¶ 90} We have already addressed Appellant's claims regarding the admissibility of testimony from Jesse, A.S., F.S., and Henry. Objections were sustained as to statements by A.S. and F.S. as to what D.S. told them happened, and accordingly were not admitted. Statements made to Jesse and Henry were not offered for the purpose of bolstering D.S.'s credibility, but rather helped to establish a timeline and chain of events as to what occurred in the Sharrock household on June 29, 2007.
 {¶ 91} Finally, concerning the testimony of Heidi Ballengee, Appellant offers no support as to how the statement that the children did not want to wake their father bolstered D.S.'s allegations. We find this allegation to be without merit or support.
 {¶ 92} Accordingly, Appellant's sixth assignment of error is overruled.
 VII. {¶ 93} In his seventh assignment of error, Appellant argues that he was denied a fair trial because the prosecutor committed misconduct.
 {¶ 94} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), *Page 21 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017,111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, we must review the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168,106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 95} Appellant first claims that the prosecutor used leading questions in questioning Shawna Sharrock, but does not specify which questions were prejudicial or leading. Moreover, there was no objection to the questions on these pages, and therefore a plain error standard of review applies.
 {¶ 96} In reviewing the pages of the transcript cited by Appellant, this court does not find any questions that imply a particular answer, which is the test as to whether a question is leading. See e.g.,State v. Robinson (May 31, 2002), 3rd Dist. No. 14-02-01.
 {¶ 97} Appellant next claims that the prosecutor impermissibly shifted the burden of proof to Appellant by requiring Appellant to explain why D.S. would have lied about Appellant's actions. Again, there was no objection. In support of this contention, Appellant cites multiple cases involving prosecutorial misconduct; however, all of those cases involved a jury. As we stated, supra, in a bench trial, we indulge in a strong presumption that the trial court considers only relevant, competent evidence "unless it affirmatively appears to the contrary." State v.Post (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759. We see no indication in the record that the trial court shifted the burden of proof to the defendant.
 {¶ 98} Appellant also claims that the prosecutor misrepresented testimony in closing arguments. Again, there was no objection to the prosecutor's closing argument, and thus a plain error standard of review once again applies. Moreover, we presume *Page 22 
that the trial court in a bench trial considers only relevant, competent evidence in making its determination and closing arguments are not evidence. See State v. Walker, 5th Dist. No. 2005-CA-00286, 2006-Ohio-6240.
 {¶ 99} We have already addressed the admission of Max Larijani's, Nurse Dieterich's, and Detective Phillips and Heidi Ballengee's testimony and found their testimony to have been properly admitted; accordingly, no prosecutorial misconduct occurred by introducing this evidence.
 {¶ 100} Appellant has not demonstrated that there was prosecutorial misconduct and that but for the alleged misconduct, the outcome of the trial would have been different. Accordingly, Appellant's seventh assignment of error is overruled.
 VIII. {¶ 101} In his eighth assignment of error, Appellant challenges his convictions as being against the manifest weight of the evidence. When analyzing a manifest weight claim, this court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 102} In reviewing the evidence, we must determine whether the State presented evidence supporting each count that Appellant was convicted of — one count of rape and three counts of gross sexual imposition. *Page 23 
 {¶ 103} In order to convict Appellant of rape, the state needed to prove that Appellant "engage[d] in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * *:
 {¶ 104} "The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b).
 {¶ 105} In order to convict Appellant of gross sexual imposition, the state needed to prove that Appellant "ha[d] sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * *:
 {¶ 106} "The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4).
 {¶ 107} The state presented the following evidence at trial"
 {¶ 108} Appellant was at the Sharrock household on June 29, 2007. All witnesses, including Appellant, agreed that D.S., A.S., F.S., Shawna, and Appellant were in the living room watching movies that evening. A.S., D.S., and F.S., all testified that at different points in the evening, both A.S. and D.S. were on the couch with Appellant.
 {¶ 109} D.S. testified that Appellant asked her to sit on the couch with him, that Appellant covered her with a blanket up to her shoulders, that he touched her breasts, rubbed her belly and then put his hand inside her pajamas and touched her vaginal area and buttocks and inserted his finger into her vagina. D.S. was able to describe these details with particularity both after the event and when she testified in court. *Page 24 
 {¶ 110} F.S. and A.S. both testified that they observed D.S. laying on the couch with Appellant.
 {¶ 111} Appellant testified on his own behalf and admitted to sitting on the couch with D.S., but stated that she was only on the couch for ten minutes. Appellant admitted to touching D.S.'s hair and stated that D.S. kissed him, but denied touching her inappropriately.
 {¶ 112} There is no need for a rape victim's testimony to be corroborated. State v. Sklenar (1991), 71 Ohio App.3d 444, 447,594 N.E.2d 88. Moreover, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was offered at trial. State v. Campbell, Franklin App. No. 07AP-1001,2008-Ohio-4831. We find that it was within the purview of the trial court to believe D.S.'s testimony over Appellant's. Accordingly, Appellant's eighth assignment of error is overruled.
 IX. {¶ 113} In his ninth assignment of error, Appellant argues that he was denied the effective assistance of counsel.
 {¶ 114} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that his trial counsel acted incompetently. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, quoting Michel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158,164. *Page 25 
 {¶ 115} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland,466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 116} Even if a defendant shows that his counsel was incompetent, the defendant must then satisfy the second prong of theStrickland test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.
 {¶ 117} Appellant first claims that trial counsel was ineffective for allowing Appellant to waive a jury trial and try the case to the court. Appellant cites no case law to support this argument. Moreover, the record demonstrates that trial court's questions to Appellant before trial showed that Appellant understood the ramifications of waiving his right to a jury trial, that the decision was his own, and that he had consulted with counsel before making that decision. There is nothing in the record indicating counsel's advice regarding whether Appellant should waive his right to a jury trial. Accordingly, we cannot conclude that counsel was ineffective in the manner argued by Appellant.State v. Turnbow, 5th Dist. No. 2005CA00026, 2005-Ohio-6702, at ¶ 30
 {¶ 118} Appellant next argues that counsel was ineffective for failing to object to the hearsay testimony of Detective Phillips, Heidi Ballengee, and Max Larijani, as well as the "bolstering" testimony pertaining to D.S.'s credibility. Having already determined that the testimony was properly admitted, Appellant's claim of ineffectiveness on this issue is overruled. *Page 26 
 {¶ 119} Additionally, Appellant argues that counsel was ineffective for failing to object to leading questions, the use of the word "lie" and the burden shifting of the prosecutor. Having already determined that no prosecutorial misconduct occurred, Appellant's claim is overruled.
 {¶ 120} Regarding Appellant's claim that trial counsel should have pointed out inconsistencies in this case, a thorough review of the record shows that counsel did do this. In making his Rule 29 motion at the end of the case, counsel stated:
 {¶ 121} "At this point I would make a Rule 29 motion that the prosecution has not fulfilled their prima facie burden based on the fact that there's no physical evidence of — of this allegation. The only thing we have are inconsistent testimony between these children. The prosecution is trying to prove a positive by a negative. They would like to say that, well, because there's no trauma, he must have done it, and with the DNA, they're saying, well, because there's no DNA he must have done it, so really all we're left with is inconsistent testimony with these children.
 {¶ 122} "And that being said, the specifics that I'm pointing to are [A.S.] said that they didn't wake up the father because they — they wanted to let him sleep because — so he could get rest for work, but then [F.S.] and [D.S.] really didn't know why. [D.S.] stated — or, I'm sorry [F.S.] stated that he did slide a note under the door, but obviously Mr. Strong testified that there was no note under the door when he woke up.
 {¶ 123} "The timeline is inconsistent throughout all three of these children as they testified. [F.S.] remembers Jesse sitting and watching this movie, but then [A.S.] testified that . . . Jesse had gone to bed. There also is a Henry Strong's testimony saying that when he got in at 11:45 and looked in the living room, he did not see any *Page 27 
indications of any — any criminal activity afoot. Then when he went back at 12:15, he did not see any indications of any criminal activity and that Shawna was awake. She testified she wasn't. Now she's mysterious — you know, she's conveniently saying she remembers Mr. Teagarden washing his hands. I just think the inconsistencies in this testimony would lead to — would lead one to believe that the prosecution has not fulfilled their prima facie burden and proven their case."
 {¶ 124} He again reiterated these problems with the state's case in closing arguments. Counsel also vigorously cross-examined witnesses throughout the trial. Nothing in the record indicates that counsel acted ineffectively.
 {¶ 125} For all of these reasons, Appellant's ninth assignment of error is without merit and is overruled.
 X. {¶ 126} In his tenth assignment of error, Appellant argues that he was denied a right to a fair trial because he was prohibited from cross-examining a prosecution witness on that witness's bias toward him.
 {¶ 127} The Sixth Amendment to the U.S. Constitution provides an accused with the right to confront witnesses against him on the basis of bias against the defendant. Moreover, Evid. R. 616(A) provides that a witness may be impeached by "[b]ias, prejudice, interest, or any motive to misrepresent."
 {¶ 128} While the cross-examination of a witness is a matter of right, the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." State v.Green (1993), 66 Ohio St.3d 141, 147, *Page 28 609 N.E.2d 1253, quoting Alford v. United States (1931), 282 U.S. 687, 691, 694,51 S.Ct. 218, 75 L.Ed. 624.
 {¶ 129} Evidence of possible bias on the part of Henry Strong against Appellant was introduced at trial. Specifically, on cross-examination, trial counsel asked Jesse Sharrock if there was any animosity between Henry and Appellant. The following exchange took place between counsel and Jesse:
 {¶ 130} "Q: Was there any animosity between Henry and Mr. Teagarden?
 {¶ 131} "A: There had been in the past, yes.
 {¶ 132} "Q: What kind of incidents?
 {¶ 133} "A: There was a jealousy issue.
 {¶ 134} "Q: In what —
 {¶ 135} "A: Well, Henry could — he could be a jealous person.
 {¶ 136} "Q: Okay.
 {¶ 137} "A: Me and Trevor had been good friends.
 {¶ 138} "Q: So he was jealous of your friendship?
 {¶ 139} "A: Correct."
 {¶ 140} On redirect, the prosecutor followed up with the following question:
 {¶ 141} "Q: Defense attorney asked you some questions about Henry's relationship with the defendant, that there were some jealousy issues. Did you ever talk to your children about those issues?
 {¶ 142} "A: No, I do not.
 {¶ 143} "Q: Why not?
 {¶ 144} "A: I believe it's an adult situation." *Page 29 
 {¶ 145} Trial counsel attempted to address the issue of bias with Henry Strong and the prosecutor objected as to relevance. Trial counsel, in responding to the objection, stated that he was seeking to introduce the evidence "as motive as to why these children may have lied." Though the evidence would have been relevant as to Mr. Strong's personal bias against Appellant, it was not admissible to stack inferences to demonstrate why a third party might have lied. Moreover, evidence of the animosity between Mr. Strong and Appellant had already been admitted, and therefore was already properly before the trial court to consider when judging the witness' credibility.
 {¶ 146} Accordingly, Appellant's tenth assignment of error is overruled.
 XI. {¶ 147} In his eleventh assignment of error, Appellant claims he was denied the right to a fair trial based on cumulative error. Specifically, Appellant alleges that the errors outlined in his first ten and twelfth assignments of error amount to cumulative error requiring reversal.
 {¶ 148} In State v. Garner (1995), 74 Ohio St.3d 49, 64,656 N.E.2d 623, 637, the Supreme Court held that pursuant to the cumulative error doctrine "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal."
 {¶ 149} In the present case, we do not find that there have been multiple instances of harmless error triggering the cumulative error doctrine. Appellant's eleventh assignment of error is overruled. *Page 30 
 XII. {¶ 150} In his twelfth assignment of error, Appellant argues that the trial court erred in sentencing him to consecutive, non-minimum sentences and in labeling Appellant as sexual predator.[6]
 {¶ 151} The statutes governing felony sentencing in Ohio used to require that a trial court make particular findings before sentencing a criminal defendant to maximum and consecutive sentences. However, inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-0856, 845 N.E.2d 470, the Ohio Supreme Court found much of Ohio's felony sentencing scheme unconstitutional because that scheme violated a defendant's right to a jury trial. Now, a trial court which is sentencing a felony offender "must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself." State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-0855, 846 N.E.2d 1, at ¶ 38.
 {¶ 152} After Foster, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences. Foster, supra, at paragraph seven of the syllabus.
 {¶ 153} Appellant argues the trial court erred when sentencing him to non-minimum sentences because the trial court did not make any of the findings listed in R.C. 2929.14 and did not give the reasons in support of that finding. However, the *Page 31 
statute he is relying on was found unconstitutional in Foster and severed from the statutory scheme. Foster, at paragraphs one and two of the syllabus.
 {¶ 154} The trial court did, when imposing sentence in this case, state:
 {¶ 155} "It is the duty of the Court to sentence. Part of the purposes of sentencing are to protect the public, and punish an offender where appropriate. The Court notes that the Defendant is accountable for his conduct and there are consequences for that conduct.
 {¶ 156} The court then sentenced Appellant within the statutory scheme on all counts. Accordingly, Appellant's argument fails.
 {¶ 157} Appellant next argues, though he does not raise it as a separate assignment of error, that the sentences for rape and GSI should have merged pursuant to R.C. 2941.25. Pursuant to App .R. 12(A)(1)(b), "this court is required to determine an appeal based upon the assignments of error set forth in the briefs under App. R. 16, and we sustain or overrule only assignments of error and not mere arguments."State v. White, 10th Dist. No. 05AP-1178, 2006-Ohio-4226, ¶ 34;Bohanon v. Farmers Ins. of Columbus, Inc., No. 05-CAE-02010,2005-Ohio-5399
 {¶ 158} Nevertheless, we will conduct an independent review of this claim. Recently, the Ohio Supreme Court, in State v. Cabrales,118 Ohio St.3d 54, 886 N.E.2d 181, modified their earlier ruling in State v.Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, by stating, "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the *Page 32 
offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import."Cabrales, at paragraph one of the syllabus.
 {¶ 159} We believe that Cabrales reaffirms the allied-offenses analysis under State v. Rance (1999), 85 Ohio St.3d 632. As theCabrales Court stated:
 {¶ 160} "Rance affirmed that the test under R.C. 2941.25(A) is "[i]f the elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" Rance,85 Ohio St.3d at 636, 710 N.E.2d 699, quoting Blankenship, 38 Ohio St.3d at 117,526 N.E.2d 816, quoting State v. Jones (1997), 78 Ohio St.3d 12, 13-14,676 N.E.2d 80. Rance then required that the elements be compared in the abstract, i.e., without consideration of the evidence in a particular case. Id. However, nowhere does Rance mandate that the elements of compared offenses must exactly align in order to be allied offenses of similar import under R.C. 2941.25(A). To interpret Rance as requiring a strict textual comparison would mean that only where all the elements of the compared offenses coincide exactly will they be considered allied offenses of similar import under R.C. 2941.25(A). Other than identical offenses, we cannot envision any two offenses whose elements align exactly. We find this to be an overly narrow interpretation ofRance's comparison test." Cabrales, supra, at ¶ 22.
 {¶ 161} While the Cabrales Court refused to superimpose such an "exact alignment" or "strict textual comparison" test, it also preserved theRance analysis:
 {¶ 162} "Thus, we have already implicitly recognized thatRance does not require a strict textual comparison under R.C. 2941.25(A). Instead, if, in comparing the *Page 33 
elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import.
 {¶ 163} "It is clear that interpreting Rance to require a strict textual comparison under R.C. 2941.25(A) conflicts with legislative intent and causes inconsistent and absurd results. Accordingly, we clarify that in determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), Rance requires courts to compare the elements of offenses in the abstract, i.e., without considering the evidence in the case, but does not require an exact alignment of elements." Id., at ¶¶ 26-27.
 {¶ 164} Under the explanation set forth in Cabrales, under a "strict textual comparison" approach, in order for merger to apply and for the two offenses to be considered allied offenses of similar import, rape would have to automatically result in the commission of gross sexual imposition and gross sexual imposition would automatically result in the commission of rape. However, Cabrales confirms what Rance originally stated, that being that either the commission of gross sexual imposition automatically results in the commission of rape or the commission of rape automatically results in the commission of gross sexual imposition.
 {¶ 165} Under R.C. 2907.02, the elements of rape as indicted in this case were:
 {¶ 166} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 167} * * * *Page 34 
 {¶ 168} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 169} Under R.C. 2907.05, the elements of gross sexual imposition as indicted in this case were:
 {¶ 170} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 171} * * *
 {¶ 172} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 173} Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 174} Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 175} Rape and gross sexual imposition may, depending on the circumstances, be allied offenses of similar import. See State v.Abi-Sarkis (1998), *Page 35 41 Ohio App.3d 333, 535 N.E.2d 745. In Abi-Sarkis, the Eighth District held that where the defendant's several acts constituted "one uninterrupted assaultive episode without a separate animus as to each act, R.C. 2941.25(A) permits only one conviction." Id., citing State v. Nash (Sept. 25, 1980), 8th Dist No. 41450 (holding that a "defendant may not be convicted of two counts of gross sexual imposition in addition to rape where he had committed vaginal intercourse and two subsequent acts of fondling during one continuous attack spanning only fifteen to twenty minutes)."
 {¶ 176} However, recently the Eighth District has modified this approach and has stated that "simply because gross sexual imposition and rape may be allied offenses in one case does not mean that they are allied in every other case." State v. Knight, 8th Dist. No. 89534, 2008-Ohio-579, at ¶ 47, citing State v. Wozniak (May 23, 1996), 10th Dist. No. 95APA03-345. There may be instances when a defendant may be convicted and sentenced for both charges.
 {¶ 177} In Knight, the testimony showed that the defendant had groped the victim's breast during the episode where he raped her. TheKnight court determined that such conduct is separate from the conduct that constituted the rape offense. In Knight, the victim was penetrated both vaginally and anally, and the court determined that such conduct is "separate and distinct from the conduct that constituted the gross sexual imposition offense." Id. at ¶ 48. Therefore, the court concluded that Knight committed gross sexual imposition when he groped the victim's breast and that this was done with a separate animus from the sexual contact that led to the conviction for rape. Id. citing State v.Reid, 8th Dist. No. 83206, 2004-Ohio-2018. *Page 36 
 {¶ 178} Similarly, we find that Appellant's conduct of groping D.S.'s breasts was committed with separate animus than the count of rape. We do find, however, that the acts of fondling D.S.'s buttocks and touching the outside of D.S.'s vaginal area were incidental to the rape and therefore that those convictions should have merged with the rape conviction. Accordingly, Appellant's convictions for gross sexual imposition in counts three and four of the indictment should be merged with count one for purposes of sentencing. As such, this matter must be remanded to the trial court for resentencing.
 {¶ 179} Appellant's final claim under this assignment of error is that the trial court erred in classifying Appellant as a sexual predator. A review of the record shows that Appellant was not classified as a sexual predator, but in fact was informed that upon his release from prison, he would automatically be classified as a Tier III sex offender pursuant to the recently enacted Adam Walsh Act in Ohio. Therefore, this claim merits no further review.
 {¶ 180} Accordingly, Appellant's eleventh assignment of error is sustained in part and overruled in part. *Page 37 
 {¶ 181} For the foregoing reasons, we overrule Appellant's first eleven assignments of error and sustain, in part, Appellant's twelfth assignment of error. The judgment of the Licking County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for resentencing consistent with this opinion.
 Delaney, J., Farmer, P.J., and Edwards, J., concur. *Page 38 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed in part, reversed in part, and remanded for resentencing. Costs assessed to appellant.
[1] The court would initially note that Appellant's brief exceeds the maximum page limit by twelve pages. While typically, we would strike the last twelve pages of Appellant's brief, because this error was not brought to the court's attention until after oral argument, the court will consider all of Appellant's assignments of error, but would caution Appellant to comply with the rules in future briefs, having now been put on notice of the rule.
[2] The cases cited by Appellant, State v. Adamson (1995),72 Ohio St.3d 431 and State v. Brown (2007), 115 Ohio St.3d 55, 2007-Ohio-4837, in support of this claim are inapposite to the present case.Adamson dealt with competency of a wife to testify against her husband where she was not informed that she did not have to testify against him, as did Brown.
[3] Appellant's claim regarding the testimony of DNA expert Max Larijani will be addressed in our analysis of Appellant's fifth assignment of error.
[4] Appellant does not specify what statements to what witnesses were hearsay.
[5] Appellant cites to State v. Schmitz, 10th Dist. No. 05AP-200, 2005-Ohio-6617, for the proposition that where the state improperly relies on speculation to prove their case, the case should be reversed. Schmitz is inapplicable to the case at bar, as the facts inSchmitz were such that the jury was asked to hypothesize that a defendant purposely deleted photographs based on lay testimony by witnesses.
[6] Appellee failed to respond to Appellant's Twelfth Assignment of Error. *Page 1